[L. A. No. 2861. Department Two.—August 27, 1912.]

MINNIE ABBOTT SMITH (Also Known as Minnie Kellett Smith), Appellant, v. I. H. SMITH (Also Known as Isaiah H. Smith), Respondent.

APPEAL—ORDER REFUSING NEW TRIAL—ERROR OF LAW—BILL OF EXCEPTIONS FAILING TO SHOW RULINGS OR EXCEPTIONS.—On an appeal from an order refusing a new trial, the appellate court cannot review any alleged errors of law committed at the trial, when the bill of exceptions fails to indicate any ruling of the court or any exception registered on behalf of the appellant.

DIVORCE—EVIDENCE—FINDING THAT PARTIES HAD NEVER BEEN HUSBAND AND WIFE.—In an action for a divorce, the evidence, although to a certain extent conflicting, is held sufficient to· sustain the finding that the parties had never been husband and wife.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

George A. Boden, and John F. Poole, for Appellant.

Clement L. Shinn, and Hutton & Williams, for Respondent.

MELVIN, J.—Plaintiff sued for divorce upon the grounds of adultery, willful desertion, and failure to provide. The alleged adultery consisted in the defendant's living with one Isabella Keating whom he had married after the date of the marriage with plaintiff averred in the complaint, and with another woman whom he had wed after the death of said

Isabella. Defendant answered admitting his marriage to Isabella Keating and to another woman following the former's death, but denying that he was ever married to plaintiff. The court found in favor of defendant and decreed that he and plaintiff were never husband and wife. This appeal is from the order denying plaintiff's motion for a new trial. No appeal is prosecuted from the judgment.

Plaintiff's bill of exceptions fails to indicate any ruling of the court or any exception registered on her behalf. We cannot therefore pass upon any alleged errors of law committed at the trial. The specifications of the insufficiency of the evidence to support the decision (erroneously described as "the *verdict*" by the notice of motion and in the bill of exceptions) were entirely too general, but nevertheless we have carefully examined the record and find that the court's conclusions were amply sustained by the evidence. There were conflicts of testimony. The case is not one, as appellant asserts that it is, in which the marriage of plaintiff and defendant was proven without material conflict. It was shown without contradiction that on February 4, 1889, defendant, who was then eighteen years of age, secured a license to marry plaintiff. She testified that this was followed by a marriage ceremony performed by a justice of the peace. It was admitted that no record of any such marriage had ever been filed. Defendant testified that he secured the license for the purpose of showing it to plaintiff's mother in order that the latter might leave home, but he denied that any marriage ceremony had ever been performed or that he and plaintiff had ever intended to live together as husband and wife. He admitted that they had meretriciously cohabited for several years and that two children (one of them since deceased) had been born to plaintiff during that period. One of these children, now a married woman, whom he acknowledged at the trial as his offspring, testified, as a witness for her father, that in 1908 her mother had said she did not know whether she was married to Smith or not. Other witnesses contradicted plaintiff with reference to the supposed marriage ceremony and corroborated defendant's account of the reason for which the marriage license was secured. An effort was made to prove a common law marriage supported by evidence of cohabitation and repute, and certain witnesses testified that defendant had at

different times introduced plaintiff as his wife. Other wit-
nesses, however, stated that soon after the alleged marriage
in 1889, plaintiff was working in a place called the "Club
Theater" where she was known as "Minnie Abbott." She
admitted that in 1890 she entered a house of prostitution at
San Bernardino as an inmate and that she was either a prosti-
tute or the owner of a house of ill-fame from October, 1890,
to August, 1907. One witness, formerly a peace officer in San
Bernardino, testified that plaintiff was known as "Minnie
Abbott" during seventeen years of her life in that city.
Other witnesses corroborated this testimony and plaintiff her-
self did not deny it. She introduced certain letters and postal
cards written by defendant and sent to her at various times
in 1905 and 1906. One of these was signed "Your old hubby
Zeck," but all of them that showed formal direction for trans-
mission by post were superscribed "Miss Minnie Abbott."
Plaintiff said upon cross-examination: "From a time prior to
August, 1907, until the day before I filed this suit, I lived
with Pete Laird as his wife and went under the name of Mrs.
Laird." In view of this sort of testimony we are somewhat
surprised at the contention of counsel with respect to the ab-
sence of "substantial conflict" in the evidence relating to the
alleged marriage.

The order from which the appeal is taken is affirmed.

Henshaw, J., and Lorigan, J., concurred.