[L. A. No. 4741.   Department Two.—April 11, 1919.]

ROBERT P. CAMPBELL, Administrator, etc., Respondent, v. CHARLES J. GENSHLEA, Administrator, etc., Appellant.

[1] NEW TRIAL—HEARING OF MOTION—JUDGE.—There is no statute or decision which gives to a litigant the right to have his motion for a new trial heard by the judge who tried the case, the motion not being heard by the judge merely as an individual, but by the court.

[2] ACTION FOR CANCELLATION OF DEED—FRAUD—PLEADING—STATEMENT OF FACTS.—In setting forth a cause of action for the cancellation of a deed because of menace, fraud, and the like exercised upon the grantor, the facts relied upon should be stated.

[3] ID.—UNDUE INFLUENCE—SUFFICIENCY OF COMPLAINT—ABSENCE OF SPECIAL DEMURRER.—In an action to cancel certain deeds on the ground of undue influence, an objection to the sufficiency of the complaint for failure to allege that the deeds were procured solely by reason of the stated acts or conduct of the grantee is without basis, in the absence of a special demurrer, and in view of the averment that the deeds were only made because of such undue influence.

[4] PLEADING—GENERAL DEMURRER—PART OF CAUSE OF ACTION.—A general demurrer will not go to a part of a cause of action.

[5] Action for Cancellation of Deeds—Fraud—General Allega-
tion—Trial Without Objection—Effect of.—Where the plead-
ings allege fraud in general terms and the parties go to trial without
special objection to the allegation of facts and circumstances con-
stituting the fraud, such infirmity of the complaint may not be
successfully urged on appeal.

[6] Id.—Statute of Limitations.—An action to cancel certain deeds
on the ground of undue influence and fraud and for general
relief is governed by the five-year period of limitation prescribed
by section 318 of the Code of Civil Procedure, and not by sub-
division 4 of section 338 of such code.

[7] Id.—Pleading—Amendment of Complaint After Decision but
Prior to Entry of Judgment—Discretion not Abused.—In such
an action, it is not an abuse of discretion to permit an amendment
to the complaint after the announcement of the decision but before
the entry of judgment by striking out the words "and executed"
wherever they appeared in the second count.

[8] Appeal — Errors of Law — Admission of Evidence — Record
—Failure to Show Rulings.—Alleged errors committed during the
trial in admitting evidence cannot be reviewed on appeal, where
the record fails to show that there was any ruling made upon the
objection to such evidence, or any motion is made to strike it out.

[9] Cancellation of Deeds — Insanity — Undue Influence —
Findings.—In an action to cancel deeds on the grounds of in-
sanity and undue influence set up in separate counts of the com-
plaint, a finding against insanity does not necessitate the entry of
a formal judgment against plaintiff based thereon, where there was
a finding in plaintiff's favor of the exercise of undue influence.

[10] Judgment — Findings — Complaint — Several Counts.—A judg-
ment entered in a case in which more than one count has been con-
sidered need have but one set of findings, and this is the rule even
where separate causes of action having some common elements are
joined.

[11] Deed—Gift from Mother to Daughter — Presumption of Confi-
dential Relationship — Undue Influence — Burden of Proof.—
In a case involving a purported gift *inter vivos*, based upon an al-
leged consideration of love and affection, where the donee is a
daughter having the control and direction of the aged donor, a
strong presumption of confidential relation arises which would place
upon the beneficiary in the transaction the burden of showing fair-
ness in dealing and full understanding on the part of the person
parting with the property, and in the absence of such showing, the
conveyance is presumed to have been obtained by undue influence
and to be void.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Grant Jackson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Robt. T. Linney and Gordon L. Finley for Appellant.

Davis & Rush for Respondent.

MELVIN, J.—Defendant appeals from a judgment quieting title to certain real property in Los Angeles and San Diego Counties, and setting aside two purported deeds from Maggie Rayner as grantor to her daughter Helen May Hubbs (afterward Helen May Genshlea).

In the first count of the complaint it is alleged in substance that on the 23d of September, 1910, Maggie Rayner, while insane, made a pretended transfer of the properties, and in the second count it is averred that on the date above set forth the two purported transfers were made by Maggie Rayner, who was then old, sick, infirm and mentally unsound and incompetent to a degree that she was easily influenced and that she was in fact influenced unduly, intimidated, and subjected to duress by her daughter who thus obtained the execution of the instruments. Upon issue joined, the cause was tried, Maggie Rayner's estate being substituted as a party after her death during the trial. The judgment was given under the second count as the court found against actual insanity.

It appeared at the trial that the property involved was deeded by Bayard Hubbs, on his deathbed, to his mother Mrs. Maggie Rayner. The daughter at that time lived in another part of the state and she and her mother were then not on good terms. Shortly after her son's death Mrs. Rayner became seriously ill. She sent for her daughter and made deeds to her property which were left with a depositary for delivery after her death. She recovered sufficiently to lose fear of speedy death and took the deeds from the person having their custody. In February, 1910, mother and daughter again quarreled and the former went back to San Diego from Los Angeles, where she had been residing. She lived with the Williams family in San Diego from April, 1910, to the latter part of September of that year. At that time and for more than a year theretofore, as the court found, Mrs. Rayner had been and she continued to be "old, sick, infirm, suffering from senile dementia, mentally unsound and incompetent to that degree that she was easily influenced, intimidated and coerced,

so that she would do and perform acts and transactions such as she would not have done but for such influence, intimidation, and coercion, and that, though not insane, was, by reason of such old age, disease, weakness of mind, and physical and mental infirmities, unable unassisted to properly manage and take care of herself or her property, and by reason thereof was likely to be deceived and imposed upon by artful and designing persons.'' It was also found that Helen May Hubbs, well knowing her mother's condition, went to San Diego shortly before September 23, 1910, took Mrs. Rayner to live with her and ''while the said Maggie Rayner was so residing with her, she, the said Helen May Hubbs, imprisoned and restrained said Maggie Rayner, and denied her communication with her friends and acquaintances, and drugged, threatened, abused, intimidated, unduly influenced and coerced the said Maggie Rayner to such a degree that she caused and procured the said Maggie Rayner to sign the purported deeds or transfers.'' It was further found that the deeds were without consideration and were only signed by reason of the undue influence and duress to which the mother was subjected by the daughter. The deeds were placed by Mrs. Rayner in the custody of Mr. Fishburn (who had been custodian of the earlier writings), with instructions to keep them until after the grantor's death and then to deliver them to her daughter. On the 30th of September, 1910, however, she and her daughter visited Mr. Fishburn, who, upon request, delivered the deeds to Mrs. Rayner. It was found that Helen May Hubbs obtained possession of the purported deeds on or about December 6, 1910, and thereafter caused them to be recorded, one in Los Angeles, February 17, 1911; the other in San Diego on March 28, 1911. The findings recited the further facts that Helen May Hubbs married Mr. Genshlea after the signing of the purported deeds; that on the 12th of January, 1913, she died testate, and that said Genshlea was claiming the property as her administrator.

Appellant complains that he was deprived of substantial rights because the motion for new trial was heard before and decided by another judge than the one who had presided at the trial and signed the judgment. [1] We know of no statute or decision which gives to a litigant the right to have his motion for a new trial heard by the judge who tried the

case. The motion is heard not by the judge merely as an individual but by the *court*. (Code Civ. Proc., sec. 660.)

Appellant insists that the general demurrer to the complaint should have been sustained. Attack is made chiefly upon the allegations regarding undue influence, fraud, etc. After averring the knowledge on the part of the daughter of her mother's incompetent condition, the second count (we need not consider the first, as plaintiff did not prevail thereunder) contains allegations that Helen May Hubbs went to San Diego, took Mrs. Rayner to live with her, and while her mother was so residing Mrs. Hubbs "imprisoned and restrained plaintiff, and denied her communication with her friends and acquaintances, and while so restraining plaintiff she drugged, threatened, abused, intimidated, persuaded, unduly influenced and coerced plaintiff, to such a degree that she caused and procured plaintiff to make and execute the purported deeds or transfers." It is asserted that this paragraph of the complaint sets forth conclusions merely instead of facts, and that it is insufficient because of failure to allege that the deeds were procured *solely* by reason of the stated acts or conduct of Helen May Hubbs, appellant citing as leading cases in support of his argument (*Estate of Gharky*, 57 Cal. 274, and *Goodwin* v. *Goodwin*, 59 Cal. 560. [2] It is true that in setting forth a cause of action for the cancellation of a deed because of menace, fraud, and the like exercised upon the grantor, the facts relied upon should be stated, but as to this point in the case at bar appellant depends upon his general demurrer. The complaint does state a cause of action to quiet title and to cancel certain deeds. [3] The deficiencies here asserted to exist were not called to the court's attention by the general demurrer. [4] A general demurrer will not go to a part of a cause of action (*Jensen* v. *Dorr*, 159 Cal. 742, [116 Pac. 553]; *Amestoy* v. *Electric Rapid Transit Co.*, 95 Cal. 311, [30 Pac. 550]), and the cause of action was sufficiently stated to justify the overruling of the general demurrer. The alleged failure to allege that the deeds were obtained solely by reason of the conduct of Helen May Hubbs is without basis, as the complaint did contain the averment that they were only made because of her undue influence, etc. All of the objections to the complaint made by appellant here and his entire argument in favor of reversal of the judgment because of the court's refusal to sustain the demurrer are met and

answered by *Yordi* v. *Yordi*, 6 Cal. App. 20–31, [91 Pac. 348]. In *Collins* v. *O'Laverty*, 136 Cal. 31, at page 36, [68 Pac. 327, 329], the court, answering objections similar to those raised by appellant in this case, used the following language: "There is in the complaint no direct allegation that the deed was obtained by fraud or undue influence; but it is alleged—in addition to the facts showing the condition of the deceased, and the circumstances of the transaction— that the defendants, 'fraudulently taking advantage of the; incapacity, illness, and weakness of mind of the said Julia Collins, procured her to sign a pretended deed, purporting to convey,' etc., which is substantially an allegation of the procurement of the deed by undue influence, and, in the absence of special objection by demurrer, sufficient." (See, also, *Trubody* v. *Trubody*, 137 Cal. 172, [69 Pac. 968].)

Appellant's objections to the complaint because of the lack of direct allegations of fraud, etc., are also untenable, in view of the fact that no special demurrer was interposed. (*Spreckels* v. *Gorrill*, 152 Cal. 383–387, [92 Pac. 1011].) **[5]** Where, as in this case, the pleadings allege fraud in general terms and the parties go to trial without special objection to the allegation of facts and circumstances constituting the fraud, such infirmity of the complaint may not be successfully urged on appeal. (*Sukeforth* v. *Lord,* 87 Cal. 399–403, [25 Pac. 497].)

**[6]** Nor was the second count of the complaint barred by subdivision 4 of section 338 of the Code of Civil Procedure. Indeed, in raising the question of the bar of the statute, appellant's counsel frankly concede that *Murphy* v. *Crowley,* 140 Cal. 141, [73 Pac. 820], seems to be an authority against their contention, but they question the soundness of that decision and assert a difference between that case and this, depending upon the fact that in *Murphy* v. *Crowley* plaintiff prayed for possession, while in the case at bar the administrator prays only that the deeds "be declared null and void," etc. General relief is asked in addition to the prayer that "plaintiff be decreed to be the owner of all of said property above described, free of any claim, right, title or interest of said administrator, of the estate of said Helen May Hubbs Genshlea, deceased, or of anyone claiming thereunder." The judgment declared that plaintiff is entitled to possession of the land. The prayer in this case

is very similar to that considered in *Page* v. *Garver,* 146 Cal. 577, [80 Pac. 860], and in that case it was held that the rule declared in *Murphy* v. *Crowley, supra,* was applicable, and that the five-year period of limitation prescribed by section 318 of the Code of Civil Procedure, was the time within which the action might be commenced. (See, also, *Scholle* v. *Finnell,* 166 Cal. 546, [137 Pac. 241]; *Cox* v. *Schnerr,* 172 Cal. 371, [156 Pac. 509]; *People* v. *Kings County Development Co.,* 177 Cal. 529, [171 Pac. 102].)

The court permitted an amendment some time after announcing the decision but before the entry of judgment. This consisted in striking out the words "and executed" wherever they appeared in the second count. It appears that during the trial it was suggested that the words "made and executed" did not merely refer to the writing and formal subscription of the deeds described, but that the word "execution" included delivery, the court and counsel calling attention of respondent's counsel to the definition as expressed by section 1933 of the Code of Civil Procedure, and expounded in *Williams* v. *Kidd,* 170 Cal. 631, [Ann. Cas. 1916E, 703, 159 Pac. 1]. Nothing was done, however, at that time to change the pleading to conform to the theory of plaintiff that there had been no effective deliveries of the instruments. After the court allowed the described amendment, defendant was formally heard upon a motion to strike out the amendment, and the motion was denied. **[7]** We cannot say that the court committed error by thus allowing the amending of the pleading. Such a course is, in view of the wide discretion given to courts in permitting amendments after decision, usually upheld. As was declared with reference to amendment of pleadings in the opinion in *Lee* v. *Murphy,* 119 Cal. 364–367, [51 Pac. 549, 550] : "I find no limitation as to the time before judgment entered when the power of the court ceases, and even after judgment it may be exercised for the relief of a party where the judgment results from mistake, inadvertence, surprise, or excusable neglect."

Appellant complains of the delay of several months between the decision and the signing of findings of fact and conclusions of law, but does not show any injury caused thereby. The only effect of this delay was to leave defendant in possession of land to which he was not entitled.

Serious error is charged as committed by the admission of testimony derogatory of the character and conduct of Mrs. Genshlea. "Such testimony," say counsel, "is of two classes: What the witness heard Mrs. Rayner say about her daughter and what the witness personally knew." In this behalf they specify certain parts of the testimony of seven witnesses, but as only two objections were made to offered testimony of this sort we may only consider the record relating to them.

The first question to which formal objection was made was as follows: "Did your aunt ever complain to you, or speak to you, of May's personal habits, as to drinking or spending money, or trying to get her property, or anything of the sort?" The objection was that the question was incompetent, irrelevant, and immaterial, because the daughter's character and personal habits were not in issue. There is no record of any ruling upon this question, but the answer appears. It involves charges of immorality and drunkenness made by Mrs. Rayner against her daughter, as well as a statement that said daughter and another had administered to her powders which the mother did not want to take and had forced her to sign checks and papers. There was no motion to strike the answer out. [8] We may not act upon this alleged error, for the reason that there seems to have been no ruling upon the objection, and while the caption "defendant's exception No. 1" *precedes* the question as reported in the transcript, we may not presume that there was any ruling made *after* the question was propounded and objection was made. The following language of the court in *Smith* v. *Smith*, 163 Cal. 630, 631, [126 Pac. 475], is, therefore, appropriate as applied to the condition of the record here: "Plaintiff's bill of exceptions fails to indicate any ruling of the court or any exception registered on her behalf. We cannot therefore pass upon any alleged errors of law committed at the trial." The other question falling under the objection of appellant was of the same general nature as the one just discussed. There is no ruling shown by the record, and for the reasons above set forth we must hold that the judgment may not be reversed because the two interrogatories were propounded and answered. Where no ruling upon an objection is shown, the inference arises that it was withdrawn.

There was no error in refusing to admit on the cross-examination of witness Robert Campbell, appearing for the plain-

tiff, a letter written by his brother Bayard Campbell to their mother, even though the writing may have contained some alleged statements of witness which were at variance with his testimony. He was not shown to be responsible for the epistle in any way. Its admission in evidence would have been the most flagrant hearsay. We are surprised both at the offer of such evidence in the lower court and the contention here that it was improperly excluded.

[9] The appellant asserts that the pleadings and findings do not support the conclusions of law or the judgment. The complaint is one to quiet title and to cancel deeds. Its sufficiency has been previously considered and declared in this opinion. All of the averments in the complaint were met by denials in the answer and the judgment gives the relief demanded by plaintiff. We are of the opinion that the pleadings do support the judgment. We are also convinced that the findings support the judgment. It is true that there was a finding against the insanity of Mrs. Rayner as alleged in the first count, but that did not necessitate the entry of a formal judgment against plaintiff based thereon. [10] A judgment entered in a case in which more than one count has been considered need have but one set of findings. This is the rule even where separate causes of action having some common elements are joined. (*Anderson* v. *Blean,* 19 Cal. App. 581, [126 Pac. 859].) The findings cover all the issues. They recite the judgment of May 9, 1912, that Mrs. Rayner was incompetent; Mrs. Hubbs' appointment as her guardian; their residence in Los Angeles to the date of the guardian's death, January 12, 1913; Mrs. Rayner's residence until her death with defendant; the appointment of A. F. McDonald as guardian *ad litem* of Mrs. Rayner; the latter's death on August 17, 1914; the subsequent prosecution of the cause by the administrator of her estate; the ownership by her of the property involved at and for many years prior to Mrs. Rayner's death; the signing and formal acknowledgment of the deeds on September 23, 1910; their deposit with Mr. Fishburn, and their withdrawal thereafter by her at a time when her daughter accompanied her to Mr. Fishburn's place of business. These are followed by the findings that for more than one year prior to the signing of the deeds and always thereafter Mrs. Rayner had been sick, infirm, etc., as set forth in the finding quoted above in this opinion; that Mrs. Hubbs had come

to San Diego, knowing her mother's weak condition, and had used the coercive measures described in a finding heretofore quoted herein; that the deeds were *only signed because* of the undue influence, duress, etc., as previously set forth; that they should, therefore, be set aside, and that Mrs. Hubbs obtained possession of the deeds in December, 1910, and caused their recordation. The other findings relate to Mrs. Hubbs' marriage to Mr. Genshlea, and other formal matters not necessary to be set forth here. That such findings support the judgment there can be no doubt. The finding that Mrs. Rayner was and her estate is the owner and entitled to the possession of the property is a finding of ultimate fact which supports the judgment of ownership. (*Estate of Hill*, 167 Cal. 59–63, [138 Pac. 690].) The findings regarding the menace, fraud, etc., of the daughter are also findings of ultimate fact, and, as we have indicated in the discussion of the pleadings, sufficient to support the judgment.

Finally, the appellant insists that the vital findings are not sustained by the evidence. It would subserve no good purpose to review in detail the conflicting testimony regarding the competency or capacity of Mrs. Rayner. Her physician described her condition at the time the deeds were signed as feeble, and expressed the opinion that thereafter she was incompetent, and many others, who had ample opportunities to know the facts, told of the aged woman's physical and mental feebleness and her susceptibility to influence. She was suffering from paralysis and senility, as one of the physicians testified. Such evidence fully supported the finding that she was incompetent and easily influenced.

The finding of undue influence is supported by the evidence. It appears that when she was in better mental condition than that under which she labored later, Mrs. Rayner, in 1908 made deeds to the property in favor of her daughter, but that these were not intended for delivery during her life. Her conduct in 1910 with reference to the deeds here involved would indicate a like purpose, and when she took the documents from Mr. Fishburn's custody she did not declare a purpose to deliver them, but said she wanted them because she was going away. After she came under the influence of her daughter the evidence shows that she turned against friends and became suspicious of them; that she left the climate of San Diego, which she loved; that she abandoned cherished

plans for visiting, at her daughter's suggestion, and that she was not allowed to talk with friends and relatives except in her daughter's presence. By her daughter this old woman was taken from the friends she cherished, from the property which her son had given her, and from the grave of that son. Dying, the daughter left a will by which this property was to go to strangers.

There was evidence which tended to support, and if believed did support, the finding that there was no delivery of the deeds. True, the recordation raised a presumption of delivery, but there was evidence that long after that time Mrs. Rayner continued to receive the rent from her agent in Los Angeles. Not until April, 1911, did Mrs. Hubbs demand that checks and mail should be sent to her. The daughter wrote and the mother signed a letter in October, 1910, directing the agent to "send all money you collect to Mrs. Rayner at this address." In the latter part of 1910 Mrs. Hubbs took her mother to the home of Mrs. Lohse in Alameda. At first, according to the testimony of Mrs. Lohse, Mrs. Hubbs said her name was Higgins. She directed that no one should see the mother, and when absent for a number of hours she kept the old lady locked in their apartments. She also told Mrs. Lohse that her mother was "not all there in the head," but that she was harmless. The date when possession of the deeds was obtained was found by the court evidently upon the testimony of this witness, who said, among other things, after fixing the date of a notary's call, at about December 6, 1910, "I had a conversation with Helen Hubbs the day after the notary was there. She came downstairs and showed me some papers, which she took out of her stocking and said to me at the time 'Now I am on velvet and I am not a bit afraid.' . . . She spoke to me of property that belonged to her mother in Los Angeles and San Diego. Mrs. Hubbs had no property when she first came but said she was expecting or waiting for some property. She said she was putting a deal through, she didn't say what deal it was, and if she could work it the way she wanted to she would be pretty well to do. . . . She showed me the papers and I recall what some of them were. I couldn't recall all of them. One was for a deed of love and affection for the Westlake property, and the mention of some property in San Diego I can't tell just exactly what it was, and there was some other property that she had the

deed to that I casually looked over but I couldn't tell you what they were. I happened to recall that the consideration mentioned in the deed of this property was love and affection because it was typewritten in there as far as I can remember.'' Without further lengthening the recital of testimony, it is enough to say that the finding of undue influence and coercion, as well as that of nondelivery, are justified and upheld.

[11] It is to be remembered that in a case involving a purported gift *inter vivos*, based upon an alleged consideration of love and affection, where the donee is a daughter having the control and direction of the aged donor, a strong presumption of confidential relation arises which would place upon the beneficiary in the transaction the burden of showing fairness in dealing and full understanding on the part of the person parting with the property. (*Nobles* v. *Hutton*, 7 Cal. App. 14, [93 Pac. 289].) In the absence of such showing, the conveyance is presumed to have been obtained by undue influence and to be void. (*Piercy* v. *Piercy*, 18 Cal. App. 751, [124 Pac. 561]; *Odell* v. *Moss*, 130 Cal. 352, [62 Pac. 555]; *Ross* v. *Conway*, 92 Cal. 632, [28 Pac. 785].) Applying these presumptions to the facts of this case, as disclosed by the record, we must conclude that the finding of undue influence in the production of the deeds, as well as that of nondelivery, were fully sustained, and in relation to the latter finding it should be remembered that before Mrs. Hubbs obtained manual custody of the deeds (as shown by the record) she herself had announced her mother's feeble mental condition. One so afflicted and so situated as was Mrs. Rayner could not make a valid delivery of a deed. The judgment would, of course, be supported upon either the finding of duress, etc., or that of nondelivery. (*American National Bank* v. *Donnellan*, 170 Cal. 9–15, [Ann. Cas. 1917C, 744, 148 Pac. 188].)

No other assignments of error require analysis or discussion. The judgment is affirmed.

Wilbur, J., and Lennon, J., concurred.