[Civ. No. 1903. Fourth Appellate District.—April 11, 1936.]

LOUISE B. MYRICK, as Administratrix, etc., Respondent,
v. LILLIAN E. BRUETSCH et al., Appellants.

John L. Fleming, John C. Miles, Joseph Hansen, Friedman & Katzev, Mose Katzev, Paul Friedman and Albert Pearlson for Appellants.

Gibson, Dunn & Crutcher, E. H. Conley and Robert F. Schwarz for Respondent.

BARNARD, P. J.—This is an action to cancel and set aside the transfers of certain real and personal properties and to quiet title to the same in the plaintiff as administratrix of the estate of Conrad Bruetsch.

Conrad Bruetsch died on April 6, 1931, leaving four children, of whom the plaintiff and Oscar Bruetsch were the children of a first marriage and the defendants Lillian Bruetsch and Conrad Bruetsch, Jr., were the children of a second marriage. The second wife died on July 11, 1930, and on July 25, 1930, Conrad Bruetsch caused all of his property, consisting of several parcels of real estate and several notes secured by mortgages or trust deeds, to be conveyed to himself and to the defendant Lillian Bruetsch, as joint tenants with the right of survivorship. On April 14, 1931, Lil-

lian Bruetsch took the necessary steps to vest the title to all of these properties in herself and Conrad Bruetsch, Jr., as joint tenants. Some time later the plaintiff and Oscar Bruetsch discovered that all of their father's property had thus been conveyed to the other children, and this action followed.

A jury returned a verdict in favor of the plaintiff and, on special issues submitted, found that Lillian Bruetsch exercised an undue influence and control over her father in connection with the execution of these conveyances, that Conrad Bruetsch had consented to and joined in these conveyances solely because of the undue influence and control exercised over him by Lillian Bruetsch, and that his acts in connection with the conveyances were not prompted by his own will and desire. Thereafter the court made findings of fact in all respects in favor of the plaintiff, finding, among other things, that a confidential relationship existed between Lillian Bruetsch and her father; that she was present at all times while the conveyances were being executed; that he received no consideration therefor; that he had no independent advice in relation thereto; that he had been in failing health since the death of his wife; that he could neither read nor write English and did not know enough English to understand ordinary business affairs; that Lillian had acquired and exercised a predominant influence and control over him to such an extent that she substituted her will and desires for his own; that she had made false accusations against the plaintiff to her father; that she had obtained the conveyances by the use of undue influence; that the conveyance of his property was prompted by and done solely because of the undue influence of Lillian; and that the same was in conflict with his true wishes and desires. From the judgment entered Lillian Bruetsch and Conrad Bruetsch, Jr., have appealed, but Lillian Bruetsch will be herein referred to as the appellant.

█ The principal contention is that the evidence is not sufficient to support the findings and judgment. Disregarding the conflicts and omitting some portions of the evidence and many of the details, the following facts appear: Conrad Bruetsch was 69 years old at the time of his death and he could neither read nor write the English language. He spoke English brokenly and the appellant testified, when her deposition was taken, "There was always someone present, either

my brother or I, when my father made any transaction because he had to have somebody interpret to make things perfectly clear.'' The appellant lived with her father and mother after 1928, and alone with her father after her mother's death. There is some evidence that her father relied upon her in his business affairs, that she acted as interpreter for him, that she had access to his safety deposit box, that his bank account was in their joint names, that she made deposits for him, and that she devoted her entire time and attention to caring for him. The conveyances were made shortly after her mother's death and at a time when he was suffering from the disease which caused his death. It was freely admitted that nothing was paid for the properties and the appellant testified that her father had never agreed to pay her anything for her services.

The conveyances were prepared by a notary who testified that he did not advise her father to make them and it appears from the evidence that he had no independent advice. The appellant went with her father to the notary on each occasion when anything was done in connection with making these conveyances. Seven such trips were made in this connection, in taking other papers desired by the notary, in preparing and executing the papers and in getting the same after they were recorded, and she was present when they were all executed. While the transfers were made more than eight months before the death of the father nothing was said to the brothers and sister until some time after the father died. After the appellant went to live with her father, in 1928, his visits to the other children became much less frequent. On one occasion, he explained the sale of a mortgage on property owned by his son Oscar, after he had told Oscar that he would not sell it and that Oscar need not pay the principal, by saying that he had to do this in order to please the appellant and her mother. There is evidence justifying the inference that the appellant discouraged the other children from coming to see their father during the last year or so of his lifetime. However, the father expressed the same affection for these children on the few occasions they saw him and seemed unable to understand why they did not come oftener.

There is considerable evidence indicating that the father desired to have his property equally divided among his children. On many occasions, between 1921 and 1928, the father

told the other children that his property was going to be divided equally among the four. In December, 1930, some months after the conveyances had been made, he told Oscar's wife that he would divide what he had equally among all his children, that he was not feeling well, and at that time he made a request of her in case anything happened to him. The respondent testified that she saw her father three or four times after his wife died in July, 1930, and that each time he talked about his property and told her he was taking care of the four children equally. She also testified that she saw her father three or four days before he died and that "when I came into the room he was pleased to see me and he told me he wasn't going to get well and that he was taking care of us all equally". She also testified that some years before her father's death the appellant told her that she had found and destroyed her father's will, that she asked her why she had done this and that "she said because my father had given Oscar and I the 22nd and San Pedro corner and said she couldn't understand why he had given this to Oscar and I so she destroyed it". There is evidence that during her father's last illness the appellant prevented the other children from seeing him except in her presence, and that on one occasion the appellant falsely told her father that the respondent was drunk.

 A number of important and material conflicts appear between the testimony of the appellant at the trial and that given by her in her deposition taken some time before. These discrepancies may well have thrown considerable doubt on her testimony as a whole.

The evidence was sufficient to raise a presumption in favor of the respondent and to place upon the appellant the burden of showing that the conveyances in question were fairly made with a full understanding and intention on the part of the father. A different rule prevails as to the evidence of undue influence necessary in order to set aside a will and that required in such a case as this. In *Longmire* v. *Kruger*, 80 Cal. App. 230 [251 Pac. 692], the court said:

"But the law makes a clear distinction between the proof of the existence of undue influence necessary to set aside a will and that which is required to cancel a deed of gift or conveyance *inter vivos*. No presumptions of undue influence are indulged in upon the contest of a will, unless confidential

relations are first established; but with respect to gifts or conveyances *inter vivos,* the extreme age and infirmity of the grantor, together with slight evidence of circumstances from which it may be inferred that the instrument was the product of coercion, will suffice to shift the burden and require the beneficiary to show affirmatively that the transaction was fair and free from influence. . . .

" 'The influence which is undue in the case of gifts *inter vivos,* is very different from that which is required to set aside a will. In the case of gifts *inter vivos,* it is considered by the courts of equity that the natural influence which such relations as those in question involve, exerted by those who possess it to obtain a benefit for themselves, is an undue influence. Gifts or contracts brought about by it are therefore set aside, unless the party benefited can show affirmatively that the other party to the transaction was placed in such a position as would enable him to form an absolutely free and unfettered judgment. The law regarding wills is very different.' "

In *Campbell* v. *Genshlea,* 180 Cal. 213 [180 Pac. 336] :

"It is to be remembered that in a case involving a purported gift *inter vivos,* based upon an alleged consideration of love and affection, where the donee is a daughter having the control and direction of the aged donor, a strong presumption of confidential relation arises which would place upon the beneficiary in the transaction the burden of showing fairness in dealing and full understanding on the part of the person parting with the property. (*Nobles* v. *Hutton,* 7 Cal. App. 14 [93 Pac. 289].) In the absence of such showing, the conveyance is presumed to have been obtained by undue influence and to be void."

It cannot be said as a matter of law that the appellant met the burden resting upon her. The evidence, with the reasonable inferences therefrom, is sufficient to sustain the findings and judgment. (*Nobles* v. *Hutton,* 7 Cal. App. 14 [93 Pac. 289] ; *Piercy* v. *Piercy,* 18 Cal. App. 751 [124 Pac. 561] ; *Pleasants* v. *Hanson,* 48 Cal. App. 626 [192 Pac. 183] ; *Estate of Cover,* 188 Cal. 133 [204 Pac. 583].)

It is next urged that the court erred in excluding evidence of certain conversations had by the deceased with persons not related to him and who had no connection with the transactions involved, concerning what he had done with

his property or what he intended to do with it. Several witnesses were asked whether they had had conversations with the deceased concerning his property. They were then asked to repeat the conversation and an objection was sustained. In view of the record before us it is not necessary to consider this point on its merits. No offer of proof was made and there was no statement as to what this evidence might be. It is impossible to tell from the record whether this evidence had any relation to the issues here, or whether, assuming it to have been admissible, its exclusion had any prejudicial effect. Under such circumstances, no reversible error appears. (*Taylor* v. *Kelley*, 103 Cal. 178 [37 Pac. 216]; *Snowball* v. *Snowball*, 164 Cal. 476 [129 Pac. 784]; *Marshall* v. *Hancock*, 80 Cal. 82 [22 Pac. 61].)

The appellant attacks certain instructions given to the jury. The jury here acted only in an advisory capacity and a finding by the court was necessary. (*Holland* v. *Kelly*, 177 Cal. 43 [169 Pac. 1000].) Any possible error in the instructions was cured by the findings made by the court, where the final responsibility lay. (*Whiting* v. *Squeglia*, 70 Cal. App. 108 [232 Pac. 986].)

Some contention is made that counsel for the respondent was guilty of misconduct in certain statements made during his closing argument to the jury. The matter in question would not justify a reversal in any event, and any possible effect has been removed since findings were finally made by the court.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.