[Civ. No. 4583.   Fourth Dist.   Sept. 22, 1953.]

JERRY ROSENBLOOM, Individually and as Special Administrator etc., Appellant, v. WESTERN AUTO TRANSPORTS, INC. (a Corporation) et al., Respondents.

Wolf & Rubins for Appellant.

Sturdevant & Kimball for Respondents.

GRIFFIN, Acting P. J.—The complaint alleges a cause of action on behalf of plaintiff Jerry Rosenbloom, individually and as special administrator of the estate of Eva Rosenbloom, deceased, to recover damages for personal injuries and property damage sustained by him, and for the wrongful death of his wife, Eva Rosenbloom, against Western Auto Transports, Inc., its driver and employee, Bernard J. Weaver, and Julius Hilfiker, executor of the estates of Samuel Hilfiker and Rosa Hilfiker, deceased, arising out of a claimed three-

car collision on April 6, 1950, on U.S. Highway 80, near Plaster City. It alleged that Jerry Rosenbloom was driving his DeSoto automobile in a westerly direction; that his wife was riding with him; that the Hilfikers were operating their Chevrolet automobile in an easterly direction; that Weaver was driving a Dodge tractor-trailer owned by Western Auto Transports, Inc., also in an easterly direction. It charged that all of these defendants so negligently operated their vehicles as to allow the Dodge tractor-trailer to collide with the Chevrolet, thereby causing the Chevrolet to collide with plaintiff's automobile; that as a result Eva Rosenbloom and both Hilfikers were killed and Jerry Rosenbloom was injured.

The executor of the Hilfiker estates appeared by answer and denied generally and specifically the allegations of negligence, and the action was subsequently dismissed by plaintiff, without prejudice, as to such executor. Defendant and respondent Western Auto Transports, Inc., and its driver appeared separately and denied generally and specifically the allegations of negligence against them. The case proceeded to trial against the respondents. A jury verdict was rendered in favor of defendants and respondents. Plaintiff's appeal is predicated upon claimed error of the court in refusing certain testimony and in disallowing plaintiff's attorney the claimed right to read certain paragraphs of the pleadings to the jury.

The evidence shows that at the time of the accident it was a clear day in April, the pavement was 20 feet wide with 8 to 10 foot shoulders and marked with a white center line. Plaintiff was driving his DeSoto in a westerly direction on the northerly side of the highway about 40 to 50 miles per hour. Approaching from the opposite direction and traveling east were three vehicles, one, a highway maintenance dump truck traveling about 35 to 40 miles per hour; two, a Chevrolet automobile driven by Hilfiker, which had overtaken and had just passed the third vehicle, a 45-foot long Dodge tractor-trailer driven by Weaver, an employee of defendant Western Auto Transports, Inc., traveling about 45 to 48 miles per hour.

The evidence shows that when Weaver was about 500 feet behind the highway maintenance truck the Chevrolet was overtaking him, and when he was about 200 feet from the highway maintenance truck the Chevrolet passed Weaver's truck on his left or in the westbound traffic lane of the high-

way at about 60 miles per hour, and while the truck and trailer were in the eastbound lane about 6 inches south of the center line. The evidence further shows that Weaver intended to pass the highway maintenance truck which was then about 200 feet ahead of him, but due to a slight curve in the road to his right that truck obstructed his view of approaching traffic from the east.

Weaver testified that when the Chevrolet was about 150 feet ahead of him the westbound DeSoto driven by plaintiff endeavored to pass the highway maintenance truck; that Weaver realized there was going to be a collision between the Chevrolet and the DeSoto since they were traveling in opposite directions in the westbound lane; that he applied the brakes to his Dodge truck and trailer and pulled to his right; that at the time the DeSoto was about to pass the highway maintenance truck the Chevrolet started to angle to the south and the right side of the Chevrolet moved south across the white center line about 1½ to 2 feet when it suddenly swerved and turned toward the north and the impact between it and the DeSoto occurred in the westbound lane of traffic; that the right front section of the Chevrolet came in contact with the left front section of the DeSoto; that upon the impact the Chevrolet spun counterclockwise, in a complete turn, and was still in motion when defendant's tractor-trailer reached that point; that the Chevrolet passed on the left side of the tractor-trailer at a distance of about 2½ feet from its left side and never came closer to it prior to the impact. He then testified that the tractor-trailer stopped with the front of the tractor directly south of the point of impact and that when the brakes were applied the tractor did turn somewhat to the north; that jackknifing of the trailer occurred and it moved to a point about 12 inches to the north and came to a stop with the tractor heading in a southerly direction and extending diagonally back to the center line of the highway.

A paint mark appeared on the rear of Weaver's left front fender 4 or 5 feet behind the front bumper on the tractor, and a small dent was made in the left running board which Weaver assumed was made by the Chevrolet when it spun around after the impact with the DeSoto. There were no marks on the trailer.

Plaintiff testified he first saw the Chevrolet approaching him in the westbound traffic lane at a distance of 350 feet; that at that time it was about 50 feet behind the highway maintenance truck and 40 to 50 feet ahead of the tractor-

trailer; that he sounded his horn, applied his brakes, and angled his car toward the north shoulder; that the Chevrolet driver angled his car to the south; that the Chevrolet spun around suddenly in a complete reverse direction and the right front fender and side of the Chevrolet struck the left front fender and side of the DeSoto; and the defendant's truck and trailer were to his left directly across from plaintiff's DeSoto. The Chevrolet skid marks extended a distance of 120 feet. The skid marks of defendant's truck and trailer measured 180 feet.

The driver of the highway maintenance truck testified he heard the screech of brakes and then, through his mirror, saw the Chevrolet and tractor-trailer behind him, and that the Chevrolet was, at that time "very slightly" ahead of the tractor-trailer; that he saw the Chevrolet "hurtle due north" towards its left and collide with the DeSoto on the north side of the road; and that it was not a "head-on" collision.

An officer stated that Weaver told him that the running board of his tractor did come in contact with the Chevrolet, according to the dents on his running board.

It was plaintiff's contention at the trial that defendant's tractor did strike the Chevrolet before the Chevrolet came in contact with the DeSoto, and that this external force caused the Chevrolet to whirl around suddenly in the opposite direction and strike plaintiff's car. It was defendant's position that the impact between the Chevrolet and the DeSoto took place approximately 150 feet ahead of defendant's tractor and that if the tractor did come in contact with the Chevrolet, it was after the collision with the DeSoto.

In support of his contention, plaintiff produced a witness who qualified as an expert physicist and was prepared to answer a hypothetical question posed to him as to whether or not it was physically possible for the Chevrolet to have turned around in the manner indicated without the application of an external force. Defendant's counsel objected on the ground that it was not a proper subject of expert testimony, and that the ultimate question and answer was the issue to be decided by the jury. It is in reference to this ruling that plaintiff makes his first point.

In ruling on the objection the court said: "I am going to sustain the objection. The evidence is before the jury; they don't need another witness to come here to testify now as to what is on this photograph (a photo showing the relative posi-

tion of the several vehicles involved, the skid marks, etc.) I have allowed him to give his expert opinion on matters which I think is to the point of impact, that is something that the inexperienced person might not be able to tell . . . but when we get into all these tire marks that are on this board, it is just as the witness has said, it is not possible to tell.'' Counsel for plaintiff then remarked: ''I will ask it another way; I will withdraw the ultimate question.'' He then reframed the question and the same objection was made, together with the objection that the law did not permit an expert to testify how an automobile accident happened by presenting a hypothetical question to an expert witness based only upon certain evidence of skid marks, photographs of the respective cars, and a diagram made by several witnesses, particularly where there were other factors in the evidence that were not considered in the question. No ruling was made upon this objection. Counsel for plaintiff then stated: ''I would like to make an offer of proof.'' The jury was dismissed for the purpose of making the offer of proof. Considerable argument ensued. The court then suggested and plaintiff's counsel agreed that he would ''look up a litle law on it'' and prepare a hypothetical question ''incorporating all the facts desired.'' The witness was later allowed to express an opinion as to the proximate time it would take the tractor-trailer, as evidenced by the skid marks, to travel 180 feet, and as to the radius in which a 1949 Chevrolet could ordinarily turn. The record does not show that counsel for plaintiff subsequently prepared any further hypothetical question incorporating any other facts desired, nor that the witness was recalled for the purpose of giving any further testimony.

It is apparent from the record that all the elements or factors desired to be established were not included in the hypothetical question, as stated; that counsel for plaintiff agreed to prepare a proposed new hypothetical question on the subject but failed to do so, and that there was therefore no ultimate ruling to which plaintiff could object. ■ Even if the testimony sought to be produced under a proper hypothetical question was admissible, which we do not here decide, in order that an aggrieved party may have his points of grievance considered on appeal, the record must show the action of the court below in admitting or rejecting matters of proof. (3 Cal.Jur.2d, p. 803, § 268.) An objection to a ruling of the trial court on evidence will not be entertained if the transcript on appeal does not disclose that the ruling objected to was made. (*Wal-*

*lace* v. *Maples,* 79 Cal. 433 [21 P. 860] ; *Campbell* v. *Genshlea,* 180 Cal. 213 [180 P. 336] ; *Kentera* v. *Kentera,* 66 Cal.App.2d 373 [152 P.2d 238] ; *Pedrow* v. *Federoff,* 77 Cal.App. 164 [247 P. 212].)

In addition, no prejudicial error appears in this respect because the witness did testify to some extent on the subject. He stated: "Well, that damage there may or may not be a retarding force type of damage, . . . The car was hit on the right side by the truck, which was going in the same direction; that would not be a retarding force, that would be an additional propelling force."

The second point involves claimed error of the court in refusing to permit plaintiff's attorney to cross-examine defendant Weaver in reference to a certain claimed statement he made to a traffic officer after the accident occurred. He was asked if he did not tell the officer it was a "head-on" collision between the Chevrolet and the DeSoto. After objection, the court remarked to counsel for the plaintiff: "Well, if you have the statement there and he made that statement, you may show it to him, and ask him if he made that statement at that time and place. By MR. RUBIN's: We don't have it here, Officer Tackett has it. BY THE COURT: I will sustain the objection." Counsel for plaintiff then suggested that the question pertained to an oral statement and not a written statement. The court then offered a suggestion to plaintiff as to the manner in which the witness might be impeached by first showing him his written statement. There apparently was some confusion between the court and counsel as to which statement counsel was inquiring about. We see little merit to this contention. Just what constitutes a "head-on" collision might be subject to different interpretations of the evidence, and no materiality is shown if it was established that Weaver concluded that it was a "head-on" collision and so stated. The statement of the witness at the trial was, when asked if this was a head-on collision as he saw it: "Pretty much . . . It wasn't directly head-on inasmuch as it wasn't a direct head-on impact. One was to the left side of the car and the other was to the right part of the car." It should be further noted that subsequently the signed statement by Weaver was stipulated into evidence and its contents were placed before the jury. In that statement the witness did refer to it as a "head-on" collision. In addition, plaintiff was permitted to show that Weaver had testified in a deposition that this was a head-on

collision. ■ Any claimed impeaching testimony must be relevant and material to the issue being tried and inconsistent with the prior statement. (27 Cal.Jur. 152, § 125.) No prejudicial error resulted.

■ The third and last point is in respect to the argument to the jury by counsel for defendants when he stated: "We feel . . . that the tractor had no contact with that Chevrolet prior to the time of impact . . . that had it not been for the poor judgment of the driver of the Chevrolet in attempting to pass two vehicles on a curve, there would have been no accident."

. In reply, counsel for plaintiff sought to answer this argument and stated that defendants never before claimed Hilfiker, the driver of the Chevrolet, was negligent, and sought to read to the jury certain paragraphs of defendant's answer which plaintiff thought so alleged. The court disallowed this procedure. Error is claimed in this respect. Examination of defendants and respondents' answer shows that Weaver and the Western Auto Transports, Inc. appeared separately from the Hilfikers, and separately denied each allegation of plaintiff's complaint insofar as they were concerned, and particularly denied the allegation of plaintiff's complaint to the effect that the negligence of each defendant operated jointly and caused plaintiff's injuries. There is no allegation therein that the Hilfikers were or were not negligent. No prejudicial error resulted from the ruling of the trial court.

Judgment affirmed.

Mussell, J., concurred.