[Civ. No. 1974. Third Appellate District.—May 26, 1919.]

# W. H. MEAD, Respondent, v. FRANK MEAD, Appellant.

[1] CONTRACTS—PROMISE BY SON TO RECONVEY PROPERTY TO FATHER—ACTION TO ENFORCE—JUDGMENT—EVIDENCE.—In this action by a father to compel a reconveyance of certain real property deeded by him to his son, the evidence was sufficient to support the judgment in favor of the father on the theory that the son induced the father to execute the deed upon the promise that the former would reconvey to the latter upon demand, and the refusal to so reconvey constituted such fraud that a court of equity would impose a trust on the legal title the son received under the deed.

[2] TRIALS—LEADING QUESTIONS—DISCRETION—ABUSE.—The matter of permitting leading questions to be asked is largely within the discretion of the trial court, and where, as in this case, the witness was an old man, quite deaf, stricken with paralysis, and feeble in mind and body, it cannot be said that the trial court abused its discretion in permitting leading questions, particularly where there was no curtailment of the right and privilege of cross-examination.

[3] CONTRACTS—PRIOR PROMISES OF SON—WHEN BINDING.—A promise by the son to reconvey property to his father upon demand made days before the deed is executed by the latter is just as binding on the son as if made at the time of the execution of the deed, provided it induces the father to convey the property.

[4] ID.—ORAL PROMISE TO RECONVEY—PROOF.—The rule that in an action to compel a reconveyance, based on an agreement not expressed in writing, the evidence of the verbal agreement must be clear, satisfactory, and conclusive, is for guidance of the trial court.

[5] ID.—RELATIONSHIP OF PARTIES—NATURE OF TRANSACTION—PRESUMPTIONS—BURDEN OF PROOF.—Where the relation between the parties is that of father and son, and the former for years had relied upon the latter's advice in business transactions and maintained the closest bond of intimacy, and in the transaction in

1. Sufficiency of evidence to establish constructive or resulting trust, note, Ann. Cas. 1916D, 1194.

1. Constructive trust arising from oral agreement to hold in trust or reconvey lands conveyed under undue influence of confidential relations, note, 2 Ann. Cas. 777.

2. Permitting leading questions as matter within discretion of trial court, note, 17 Ann. Cas. 840.

5. Presumption of undue influence in case of conveyance *inter vivos* by parent to child, notes, Ann. Cas. 1918B, 457; Ann. Cas. 1915D, 711; 17 Ann. Cas. 989; 35 L. R. A. (N. S.) 944.

question the former had no independent advice, and the convey-
ance was without valuable consideration, the transaction resulting
in benefit to the son 'should be viewed with the most scrutinizing
jealousy, and the presumption of fraud attaches and must be over-
come by evidence that the conveyance is what it purports to be.

APPEAL from a judgment of the Superior Court of Sacramento County. J. E. Prewett, Judge. Affirmed.

The facts are stated in the opinion of the court.

White, Miller, Needham & Harber for Appellant.

Driver & Driver and G. W. Bedeau for Respondent.

BURNETT, J.—The matter in controversy is set out substantially in appellant's brief, as follows:

"Respondent and appellant are father and son respectively. By his bill of complaint respondent seeks a reconveyance of certain real property deeded by him to his son in the' year 1911 when respondent was of the age of seventy-six years. The complaint which was filed during the fall of 1916, . . . sets forth in substance that for several years prior to the date of the execution of the deed in question respondent was the owner of real property therein described, that he is of advanced age, is ignorant of business and legal transactions concerning the selling and conveying of real estate and title thereto, and that appellant had been his trusted agent and counselor in matters relating to the management of his real estate; that in the year 1909 respondent had executed a contract for the sale of said property on the installment plan, appellant acting as agent and adviser and having entire charge and management of the sale; that subsequently default was made in the payment of installments on the purchase price, whereupon appellant stated to respondent that the title to said real property could be clouded and trouble and litigation would result by the recordation of said contract by the purchasers; that defendant then advised plaintiff to convey said property to him, and promised and agreed that if plaintiff did convey said property to him that he would hold the same in trust for plaintiff and would reconvey said property to plaintiff upon demand; that on April 4,

1911, respondent, without receiving any consideration, executed and delivered a deed of said real property to appellant which was at once placed of record, and that appellant refuses to reconvey the same although demand has been made. Appellant's answer contains certain denials of the alleged ignorance of the respondent, of the confidential relationship, of his alleged management of the sale, of the making of the alleged parol trust to reconvey on demand, of the execution and delivery of the deed because of the alleged confidential relation, or respondent's ignorance or inexperience or customary reliance upon appellant's advice, etc., and alleged, on the contrary, that respondent conveyed said property to appellant of his own free will and volition and without any solicitation of anyone and without menace, fraud, or undue influence of any person.

"The issues thus presented were tried on December 5, 1917, by the court sitting without a jury and the learned judge who presided concluded to grant the prayer of the complaint."

Two points only are made by appellant why this decree should be reversed, to wit:

1. The insufficiency of the evidence to support it; and

2. The abuse by the trial court of its discretion in permitting respondent's counsel to persist in propounding leading questions on direct examination.

We will discuss the above points in the order named. It will not be necessary to quote extensively from the record, as a careful perusal of the same discloses a sharp conflict therein upon the material points, with sufficient and ample evidence to support the judgment of the trial court.

[1] Indeed, the inquiry might properly be limited to one question, and that is, whether the son induced the father to execute the deed upon the promise that the former would reconvey to the latter upon demand. If there is evidence in the record to justify an answer thereto in the affirmative, the judgment of the lower court must be affirmed. This is admitted by appellant in the following language: "It will clear the atmosphere if we concede at the outset of this reply that if our client induced his father to execute the deed in question on a promise to reconvey on request, then the son's refusal to reconvey constitutes such fraud that a court of equity will impose a trust on

the legal title the son derived under the deed.'' One has
only to read the father's testimony to find support for the
conclusion that the deed was executed under such condi-
tions. Two or three questions and answers will show this
beyond peradventure: "Q. I say, did he ask you to deed it
to him? A. Yes, he wanted me to give him the deed so
Osborne would not do anything. Q. Frank made certain
representations to you about the Osborne proposition. Did
you depend upon those representations when you made the
deed? A. Yes. Q. Was that the reason, why you made the
deed? A. He would keep it so it would not get out of
his hand, so Osborne would not get it. Q. What did Frank
say to you, if anything, about deeding it back? A. He
said when Osborne left, the property would return to me.
He left so I knew there would be no trouble with his wife.
. . . Q. Did Frank tell you that if Osborne left the place
he would deed the property back to you? A. Yes.''

The trial court undoubtedly believed the witness, and it
surely cannot be seriously contended that it is not a fair
construction of his language that his son requested the deed
and promised to return the property. We discover nothing
cryptic or complicated in the testimony of the old man. It
is true that he did not express himself as accurately or
happily as one might wish, but the learned trial judge ap-
parently understood him and we are satisfied that he
interpreted the language of the witness in accordance with
the fair import of its terms. Of course, we might expect
some inconsistency, some hesitation, and some confusion on
the part of the plaintiff in attempting to narrate the occur-
rence in reference to the deed. He was an old man, eighty-
three years of age, he was quite deaf, he had been stricken
with paralysis, he was feeble in body; his mind, we may
surmise, was greatly disturbed by the contemplation of his
troubles, and was not altogether unimpaired by the ravages
of time. An artist could hardly paint a more vivid pic-
ture of his condition than is presented by his own lan-
guage: "I have been very sick. I have been in very bad
shape. I wish I had died last night than come up here to-
day. I wished I had been found dead. The trouble I
have had. The trouble I have over loss of property, loss
of property and money and health, too. I wished I had

died last night. This morning they make me get up and come here. I wished to God I had died last night.''

[2] Appellant complains that so many leading questions were addressed to the witness. This is a matter largely within the discretion of the trial court, and we cannot say that it was abused. The physical and mental condition of the witness justified this manner of examination and, it may be added, that there was no curtailment of the right and privilege of cross-examination. Indeed, the court invited the fullest inquiry on the part of appellant. Moreover, the witness, without the suggestion of a leading question, virtually stated that Frank had promised to deed the property back to him. That, at least, is a fair inference from the statement that we have already quoted in reference to the property returning to him.

Appellant contends that there are some inconsistencies in the testimony of plaintiff. That would not be surprising, and granting the claim, they are not of such character as to demand the repudiation of the testimony as unworthy of belief. In this connection, it is claimed that the trial court misconstrued the following remark of respondent, made at the time of the execution of said deed: ''It goes to Frank anyhow. He is going to get all I got. He is to have it.'' This was in response to the question of the scrivener: ''Well, what is going to become of it if you should die?'' The court below saw in the statement an implication that the deed was not intended as an absolute conveyance of the fee. Be that as it may, it is clear that the witness was referring to the time of his death, and it was then that Frank was to have all the property. This statement is not at all inconsistent with the theory that the property was to be returned to plaintiff upon the condition stated in his testimony. But the case is not to turn upon the proper construction of this somewhat doubtful expression since there is direct evidence, as we have seen, in favor of respondent's position. It may be added that plaintiff was not required to explain to the scrivener the agreement between him and his son, and even if he had intentionally misled him in that respect, no one would have any legal cause to complain.

[3] A further contention is that, if the father and son had such communications as are asserted by the former,

they antedate the execution of the deed and constituted only negotiations that were superseded by the terms of the written instrument. As to this, appellant is in error. There is some evidence that said understanding was expressed at the time the deed was delivered. At any rate, it was not necessary for appellant to repeat the promise to make it binding, and it was just as significant made days before the transaction was consummated, provided it induced the father to convey the property. That the said promise did so move the father, the trial court was entirely justified in finding.

[4] It is further contended that the general rule requiring only substantial support for the finding of the lower court does not apply to this class of cases where an effort is made to set aside a deed or to have it adjudged as affected by a trust not expressed in writing. The claim is that the evidence of a verbal agreement in such cases must be ''clear, satisfactory, and conclusive,'' and that this case does not meet that test. We reflect, though, that such rule is for the trial and not the appellate court (*Brison* v. *Brison,* 90 Cal. 334, [27 Pac. 186]), and we have no doubt that the evidence so appeared to the judge below.

[5] Moreover, there are certain circumstances established by the evidence which take this case out of the general rule in reference to the burden of proof. These we may briefly mention. Of first importance is the fact that the relation of trust and confidence existed between the parties. This is virtually conceded by appellant. At any rate, besides the inference created by the natural relation of father and son, the evidence shows that the father reposed implicit faith in his son, and that he had for years relied upon his advice in business transactions and maintained the closest bond of intimacy.

The record reveals this intimacy and shows the willingness of the son to profit by the situation thus created. To this circumstance must be added the fact that plaintiff had no independent advice, and the conveyance was without valuable consideration. Under such circumstances, the decisions hold uniformly that the transaction resulting in benefit to the trustee should be viewed with ''the most scrutinizing jealousy'' and that the presumption of fraud attaches, and must be overcome by evidence that the deed

is what it purports to be. (*Yordi* v. *Yordi*, 6 Cal. App. 20, [91 Pac. 348]; *Nobles* v. *Hutton*, 7 Cal. App. 15, [93 Pac. 289]; *Piercy* v. *Piercy*, 18 Cal. App. 755, [124 Pac. 561]; *Soberanes* v. *Soberanes*, 97 Cal. 145, [31 Pac. 910]; *Odell* v. *Moss*, 130 Cal. 358, [62 Pac. 555]; *Cox* v. *Schnerr*, 172 Cal. 371, [156 Pac. 509].)

In the last of these decisions it is said: "The burden of proof usually rests upon the person asserting fraud, but when one bases a claim upon a contract obtained from a person to whom he stands in a relation of trust and confidence, it becomes his task to prove that he exhibited that *uberrima fides* which removes all doubt respecting the fairness of the contract." However, the principle is well settled, and we need go no further in its exposition.

Viewing the evidence in the light of this presumption, there can be no earthly doubt of the justification for the court's finding.

What we have already said is, we think, a sufficient answer to appellant's second contention. We cannot say that the course pursued as to leading questions resulted in prejudice to appellant. It cannot be assumed that by the form of the question the witness was misled or induced to commit perjury. The trial court was in a position to determine whether such procedure was in the interest of justice, and it is not for us to say that error was thereby committed.

Probably the only surprising thing in the matter is that the son should have contested his father's claim. It is to be hoped that such cases are of infrequent occurrence.

It is fair to suppose that nearly every son, even under the admitted circumstances of this case, would rather surrender the property to the father, who had earned it and believed he was entitled to have it reconveyed, than by insisting upon a sordid legal right, bring his aged parent in sorrow to his grave.

It may be added that the son does not present a pleasing spectacle, when, by his testimony, he virtually brands his father as a perjurer. It would have been much better for him if he had obeyed the Commandment: "Honor thy father and thy mother."

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.