[Civ. No. 6379. Third Appellate District.—January 6, 1941.]

DORA FORMAN, Respondent, v. MAX GOLDBERG et al., Appellants.

Peter T. Rice and Sydney M. Williams for Appellants.

Henry S. Cohen for Respondent.

THOMPSON, J.—The plaintiff brought this suit against her parents to declare a voluntary trust in property belonging to her. It was alleged and found that the defendant, Max Goldberg, obtained possession of the property by means of fraud; that he holds it in trust for his daughter and that he refused to account for or deliver the property to her. Judgment was rendered in favor of the plaintiff for the recovery of the property or the value thereof. From that judgment the defendants have appealed.

The defendants are husband and wife. The plaintiff is their daughter. She was married and has two children. Her husband died as the result of a cancer in April, 1930. After his death, she lived with her parents who reside in Los Angeles. A relationship of confidence and trust existed between the plaintiff and her parents. The plaintiff owned two trust deeds which were executed in her name. One of them secured a loan for $4,000 and the other was for the sum of $2,000. She also owned an automobile, a house and lot in

Los Angeles which was sold for $3,700, and an additional sum of money which is involved in this suit. She maintained a separate savings account in a New York bank, and she rented a safe-deposit box in a Los Angeles bank jointly with her father, in which she kept her bank books, her trust deeds and other valuable documents and jewelry. Her father was engaged in the real estate business.

The plaintiff's husband was a painter and paper-hanger. About a month before the husband's death, Max Goldberg persuaded his daughter to assign to him her two deeds of trust with the agreement that he would hold in trust and invest her property for her benefit and return it to her upon demand. The deeds were assigned March 21, 1930. At the same time their Willys Knight automobile was transferred to Mr. Goldberg pursuant to the same agreement. After the death of her husband, the plaintiff's house and lot at Number 315 North St. Louis Street, Los Angeles, was sold by Mr. Goldberg at her request for $3,700, and the proceeds were also retained by him under the same agreement. The plaintiff received from the Painters' Union, to which her husband belonged, as life insurance on account of his death, the sum of $1149.79, which, together with the further sum of $700 in cash, she entrusted to her father under the same agreement.

With respect to the creation of the voluntary trust in said property belonging to the plaintiff, she testified that her father said to her, just prior to the assignment of the trust deeds:

"Dora, you are going to be left alone with two kids and you have got here this money and property, why don't you transfer it to me? I will take care of it; I am in the real estate business; I can handle it for you. . . . You know I will never take your money away; you can trust me; we will have to live together; and, furthermore, you don't know much about business transactions, and I will handle it; and any profit, you and your children will profit. . . . Let's go to the bank and we will take care of the transaction."

The plaintiff agreed to transfer to her father and to entrust him with her property under that agreement. It appears that a written document acknowledging the trust was executed by the defendant, Max Goldberg. The plaintiff testified in that regard:

"Q. Now, had your father . . . executed a written paper of some sort? A. Yes, he had. Q. Now when did he execute *this paper*, before you signed the mortgage, or after? A. After. Q. How long after? A. About two months; . . . He says: 'I am going to protect you and the children *with this bare paper* in case anything happens to me, it would be yours and nobody will be able to get it.' "

This document was placed in plaintiff's joint safe-deposit box in the bank with other papers of value. Subsequently, Mr. Goldberg procured from the plaintiff her key to the box, and secured a separate safe-deposit box to which he transferred the documents, and to which the plaintiff did not have access. None of the money or property was ever returned to the plaintiff except the sum of $300. On Labor Day, 1936, the plaintiff demanded of her father the return of her money and property, which he refused.

This suit was commenced to establish in the defendants a voluntary trust of the money and property for the benefit of the plaintiff, which property, it was alleged, was procured by the defendant, Max Goldberg, by means of fraud and misrepresentation. No demurrer to the complaint was filed. The defendants denied the material allegations of the complaint and affirmatively alleged that the two trust deeds and the money secured thereby originally belonged to them and that the instruments were merely executed in the name of the plaintiff as an accommodation to them during the time they were absent on a journey to Europe.

Findings were adopted favorable to the plaintiff on all material issues. The court determined that all of the money and property in question belongs to the plaintiff and that it was delivered to the defendant, Max Goldberg, as a voluntary trust for the benefit of the plaintiff, with an agreement to restore it to her upon request; that upon demand the defendants refused to restore the property, with the exception of the sum of $300, which was paid to her, and that the possession and control of the money and property were procured by means of fraud exercised by Max Goldberg. Judgment was rendered in favor of the plaintiff for the aggregate sum of the proceeds of the two trust deeds amounting to $6,000, and for the proceeds of the sale of the Los Angeles house and lot in the amount of $3,700, and for the life insurance benefits amounting to $1149.79, together with $700 in addition thereto,

less said sum of $300 which was subsequently paid to plaintiff. The court also directed the return of the Willys Knight automobile. Interest on said sums was also allowed plaintiff from the respective dates of the receipt thereof at the rate of 7% per annum. From that judgment the defendants have appealed.

The appellants contend that the findings and judgment are not supported by the evidence; that this suit is barred by the statute of limitations; that the court erred in receiving testimony of the plaintiff's ownership of the money and property, and in failing to appoint an interpreter to translate the questions and answers of the defendants at the trial, who, it is asserted, possessed an inadequate knowledge of the English language.

It is also asserted the court erred in refusing to grant a new trial, for the reason that the affidavits, which were filed by the defendants on that motion, on the ground of newly-discovered evidence, were unanswered by the plaintiff.

The findings and judgment are adequately supported by the evidence, in spite of a serious conflict of testimony. Under the circumstances of this case there is satisfactory evidence that a confidential relationship existed between the plaintiff and her father and that he procured by fraud the transfer of all her money and property to him in trust for her benefit. A close bond of friendship and confidence existed between them. Her husband was about to die as a result of a malignant cancer; she had two young children who were dependent upon her care; there was no monetary consideration for the property; she was unaccustomed to business, as her father significantly suggested to her; her father was engaged in the real estate business; after the death of Mr. Forman the plaintiff and her children were taken into the household of her parents; Max Goldberg transferred her bank books and valuable documents from a safe-deposit bank box, in which she held joint tenancy, to one of his own to which she did not have access; for a period of six years he handled all her money and property without accounting to her for any portion of it and he refused to restore any of the property to her, except the sum of $300, claiming that it belonged to him. Under such circumstances the court is warranted in holding that a confidential relationship between the father and the daughter was established. (*Cooney* v. *Glynn*, 157

Cal. 583 [108 Pac. 506]; *Lauricella* v. *Lauricella,* 161 Cal. 61 [118 Pac. 430]; *Campbell* v. *Genshlea,* 180 Cal. 213 [180 Pac. 336]; *Mead* v. *Mead,* 41 Cal. App. 280 [182 Pac. 761]; 20 Cal. Jur. 443, sec. 41; 13 Cal. Law Rev. 174.) ■ It is true that the mere relationship of father and daughter is insufficient evidence upon which to raise the presumption of a fraudulent transfer. (*Best* v. *Paul,* 101 Cal. App. 497 [281 Pac. 1089].) But, under the affirmative evidence adduced of fraud and unjust profit secured by the defendants in the present case, the burden shifts to them to show that the transaction was fair and free from undue influence or fraud. (*Campbell* v. *Genshlea, supra,* at p. 224; *Johnson* v. *Clark,* 7 Cal. (2d) 529 [61 Pac. (2d) 767].)

■ The requirements of sections 2221 and 2222 of the Civil Code, to show the intention of the parties to create a voluntary trust in the property transferred, the subject-matter of the transaction, the purpose, and the acceptance of the trust, were adequately fulfilled by the evidence which was adduced in this case.

Section 2224 of the same code provides that:

"One who gains a thing by fraud, accident, mistake, *undue influence, the violation of a trust, or other wrongful act,* is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Section 2223 of the same code provides that:

"One who *wrongfully detains a thing* is an involuntary trustee thereof, for the benefit of the owner."

■ Where a transfer of property has been obtained through fraud, actual or constructive, it will be set aside at the instance of the grantor, and the grantee may be deemed to hold title as constructive trustee for the grantor. If the property has been sold by the grantee, the grantor may recover the proceeds of the sale, or the grantor may sue for the reasonable value of property so converted. (*Johnson* v. *Clark, supra.*) The same principle applies to a trust in personal property.

■ The evidence in this case amply supports the findings of the court that the plaintiff's money and property were procured by the defendant Max Goldberg by means of false and fraudulent representations and that his agreement to hold them and invest the proceeds for the benefit of the plaintiff, to be restored to her upon demand, was made with the

intention not to perform that promise, and that the transaction therefore created a constructive trust entitling her to recover the property or the value thereof. (*Brison* v. *Brison,* 75 Cal. 525 [17 Pac. 689, 7 Am. St. Rep. 189] ; *Lauricella* v. *Lauricella, supra;* sec. 1572, Civ. Code; 65 C. J. 254, sec. 37; Witkin, Summary of California Law (5th ed.), p. 750.) ■ Evidence of a parol agreement creating a constructive trust is competent under the pleadings and circumstances of this case. (*Brison* v. *Brison, supra,* at p. 533.)

■ Neither the statute of limitations nor laches barred the maintenance of this action. (*Cooney* v. *Glynn, supra,* at p. 589.) The constructive trust was continuous in its nature. The fraudulent intention of Max Goldberg to retain the property as his own was not discovered by the plaintiff until he repudiated the trust shortly before the commencement of this action.

■ The court did not err in failing to appoint an interpreter for the examination of the defendants as witnesses at the trial. No request for the appointment of an interpreter was made. Both defendants were examined at great length. They appear to have thoroughly understood all questions propounded to them, and their answers were invariably responsive and intelligible. We are pointed to no evidence indicating that either of them failed to comprehend the full import of all questions propounded to them. There is no merit in the claim that the court erred in failing to appoint an interpreter for the testimony of the defendants.

■ Two photostatic copies of statements of the bank accounts of plaintiff were received in evidence over the objection of the defendants. Before the copies were offered in evidence, the plaintiff was very fully examined without objection, by reference to these statements with respect to the bank accounts and various items included therein.

Finally, when they were offered in evidence, the defendants objected to them on the ground that they were not the best evidence. The objection was overruled, and they were received in evidence. The statements were referred to in the oral examination and offered in evidence to show that plaintiff was the owner of the money which was represented by the two trust deeds which are involved in this suit. In the absence of preliminary proof of the genuineness of the bank statements, from which the photostatic copies were made, they were in-

competent and should have been excluded from the evidence. But the ruling was harmless. The evidence supplied by the copies was merely cumulative. The plaintiff had previously testified fully, without objection, regarding the ownership of the money and the material items of the bank account. The ruling admitting the copies in evidence was not reversible error.

The trial court did not abuse its discretion in denying defendants' motion for a new trial, which was based on alleged newly-discovered evidence and the failure of the defendants' attorney to thoroughly understand his clients on account of their inability to speak the English language. The affidavits in support of the motion for new trial are inadequate in many respects. Upon the chief issue regarding the ownership of the property in question much of the evidence sought to be elicited is merely cumulative. The defendants positively swore at the trial that they owned the money and property. Newly-discovered evidence, which is merely cumulative, affords no ground for a new trial unless it is of such probative force that it would require the rendering of a different judgment. (*Sawyer* v. *Nelson*, 115 Cal. App. 490, 495 [1 Pac. (2d) 1068]; 1 Hayne on New Trial and Appeal, p. 417, sec. 90; 20 Cal. Jur. 94, sec. 62.) The affidavits which were filed in this case fail to allege facts showing that the additional evidence could not have been obtained at the trial by the exercise of due diligence. Affidavits on motion for a new trial on the ground of newly-discovered evidence are fatally defective when they fail to allege facts constituting due diligence. (20 Cal. Jur. 184, sec. 120.) The affidavits of Jacob and Ida Weinstock to the effect that they conveyed to Max Goldberg, November 11, 1926, a house and lot at Number "225 North St. Louis Street" in Los Angeles, apparently have no bearing on the title to the Los Angeles house and lot claimed by the plaintiff. The court definitely found that the house and lot in Los Angeles belonging to plaintiff was "located at 315 North St. Louis Street". The affidavit of the defendants' attorney that he was unable to fairly present their defense to this suit, because of their inability to understand or speak the English language is without merit. That affiant conducted the trial in behalf of his clients throughout the case, and must have been fully informed of their knowledge or lack of knowledge of the English language from the beginning of his employment. Moreover, the testi-

mony of the defendants at the trial indicates that they clearly understood and intelligently answered all questions propounded to them.

We conclude that the court did not err in denying the motion for new trial.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.