[No. G030166. Fourth Dist., Div. Three. Oct. 2, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ELIZABETH MARIE AUGUSTIN, Defendant and Appellant.

446

COUNSEL

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil P. Gonzalez and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RYLAARSDAM, Acting P. J.**—The prosecution filed an information against defendant Elizabeth Marie Augustin which included several charges of assault by means of force likely to produce great bodily injury. (Pen. Code, § 245, subd. (a)(1).) A jury subsequently convicted her of one assault count as charged and two counts of misdemeanor assault. The victim, who was the prosecution's primary witness at trial, suffers from cerebral palsy and has a related speech disability. Defendant contends that the victim's speech disability rendered her incapable of communicating her testimony and asserts the trial court should have disqualified her as a witness. Alternatively, defendant argues the trial court erred by allowing the parties to ask the victim leading questions and by failing to appoint an interpreter to communicate the victim's answers. Finally, defendant claims the foregoing errors resulted in a violation of her constitutional rights to due process and confrontation. We disagree with these contentions and affirm defendant's conviction.

### FACTS

A detailed summary of the evidence is not required to decide the issues raised in this case. Suffice it to say that, during a three-week period while the defendant and the victim resided together, defendant frequently lost her temper and took her anger out on the victim by yelling at her, throwing objects at her, or striking her. On one occasion, defendant threw a spray can at the victim, cutting her lip. During a second incident, defendant struck the victim numerous times with a hairbrush. In a third incident, defendant gave her a black eye by throwing a pager at her.

### DISCUSSION

*Competency to Testify*

Defendant first contends the trial court erred by failing to disqualify the victim as a witness. Evidence Code section 701, subdivision (a) (all further statutory references are to the Evidence Code) declares, "[a] person is disqualified to be a witness if he or she is: [¶] (1) Incapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him [or her] . . . ."

Defendant waived her right to challenge the victim's testimony under section 701 because she failed to object at trial. A witness's competence to testify must be challenged at the trial level. (*People v. Lewis* (2001) 26 Cal.4th 334, 360 [110 Cal.Rptr.2d 272, 28 P.3d 34]; *People v. Cudjo* (1993) 6 Cal.4th 585, 622 [25 Cal.Rptr.2d 390, 863 P.2d 635].) Defense counsel did not request the trial court review the victim's competence to testify, by voir dire or otherwise, mentioning the issue only after the trial court ruled the

parties could ask the victim leading questions when necessary: "I think for a witness to be competent to testify, she has to be able to communicate her observations in open court . . . [a]nd if that can't be done, then she's not competent to testify." But even then counsel's concern was focused on "how the record is being preserved as to the witness."

■ Defense counsel did move to strike the victim's testimony on the ground that the prosecutor should not be permitted to ask leading questions to clarify her testimony. But this belated motion did not constitute an objection to her competency. A motion to strike must "make clear the specific ground . . ." on which it is based. (§ 353, subd. (a); *People v. Holt* (1997) 15 Cal.4th 619, 666–667 [63 Cal.Rptr.2d 782, 937 P.2d 213]; *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1208 [105 Cal.Rptr.2d 187].) The motion challenging leading questions did not preserve an objection to the victim's competency.

Furthermore, even if defendant had made a timely objection under section 701, at trial she failed to show the witness was "incapable of expressing . . . herself." ■ The burden of proving a witness's incompetence lies with the objecting party. (*People v. Lewis, supra,* 26 Cal.4th at p. 360.) Defendant argues, "[t]he defense did prove . . . that [the victim's] speech impediment prevented her from communicating in [a] comprehensible manner." But defendant cites no evidence in support of this claim. She merely references numerous notations in the record where a word or two of the victim's testimony was transcribed as "unintelligible."

While the victim suffered from cerebral palsy and may have been more difficult to understand than the typical witness, the record reflects she is quite intelligent, and at trial was both alert and able to express herself concerning the assaults. Admittedly, read directly from the reporter's transcript, some of her testimony is indecipherable. For example, according to the transcript, at one point the victim stated: "No (unintelligible) injuries because I have (unintelligible) in the (unintelligible) and that wasn't about very (unintelligible) if I'm (unintelligible)." But even this seemingly impenetrable statement is comprehensible in the context of the prosecutor's continuing line of questioning: "Q: So you said you were a dancer; right? [¶] A: Yes. [¶] Q: And you have to wear a leotard; is that correct? [¶] A: Yes. [¶] Q: So you said it wouldn't be very practical if you had bruises all over your body; right? [¶] A: Yes." In addition, the bulk of the victim's recorded testimony is comprehensible even without the prosecutor's use of leading questions. During the victim's second day on the stand, the court reporter recorded only three unintelligible words, though the victim's testimony covers 70 pages of the record. Had defense counsel not understood an answer, he could have requested the court ask the victim to repeat it.

The trial judge concluded, "I don't believe this is a competence problem . . . . There has been no demonstration of lack of competence or no real challenge to it." Absent a showing of an abuse of discretion, the appellate court will affirm a finding that a witness is competent to testify. (*People v. Lewis, supra,* 26 Cal.4th at p. 360; *People v. Willard* (1983) 155 Cal.App.3d 237, 239 [202 Cal.Rptr. 100].) In *Lewis,* the Supreme Court upheld the trial court's conclusion that the challenged witness was competent to testify, citing an excerpt of the witness's testimony: "No way my fingerprints. . . . It was negative to me, is nothing. If it comes out positive me, yes, fingerprints on it. Because I could barely positive negative." (*People v. Lewis, supra,* 26 Cal.4th at pp. 354, 360–361.) The victim's recorded testimony in the present case was comparatively coherent, and taken as a whole, provides sufficient evidence to support the finding that she was competent to testify.

The trial court's competency determination fell within the scope of its discretion. ■ A witness who is merely difficult to understand is not inherently or automatically incompetent under section 701. (*People v. Lewis, supra,* 26 Cal.4th at p. 361.) Thus, the trial court's ruling in this case did not constitute an abuse of discretion.

*Leading Questions*

Defendant also contends the trial court erred in permitting the parties to employ leading questions when examining the victim. Not so.

■ Under section 767, subdivision (a), "Except under special circumstances where the interests of justice otherwise require: [¶] (1) A leading question may not be asked of a witness on direct or redirect examination." To that end, "[t]rial courts have broad discretion to decide when such special circumstances are present. [Citations.]" (*People v. Williams* (1997) 16 Cal.4th 635, 672 [66 Cal.Rptr.2d 573, 941 P.2d 752].) A witness's physical disability is a "special circumstance" justifying a decision to allow counsel to ask leading questions of the witness. In *Mead v. Mead* (1919) 41 Cal.App. 280 [182 P. 761], the witness was a feeble 83-year-old man suffering from deafness and paralysis. (*Id.* at p. 283.) The appellate court upheld the trial court's decision to allow counsel to ask the witness leading questions because "[t]he physical and mental condition of the witness justified this manner of examination . . . ." (*Id.* at p. 284.)

The comment to section 767 explicitly states that the section's exception allowing leading questions in special circumstances "would permit leading questions on direct examination for . . . examining handicapped witnesses . . . ." (Assem. Com. on Judiciary com., 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 767, p. 410.) Although, as discussed below, the

victim could communicate her testimony directly so as to be competent to testify without an interpreter, her speech impediment precluded her from doing so efficiently. The trial court found the use of leading questions to be the most direct means of circumventing this obstacle.

In *People v. Mason* (1948) 86 Cal.App.2d 445 [195 P.2d 60], the court emphasized that it is "proper to ask leading questions when they are designed more quickly to reach the testimony material to the issues [citation] . . . ." (*Id.* at p. 456.) ■ Here, the trial court determined the use of leading questions provided a more efficient and less biased way for the victim to communicate her testimony, stating, "this just seems to me to be a fair way of preserving the record and receiving a fair verdict from the jurors by making sure that they understand as best as possible what her testimony is." The court's decision is corroborated by the record itself, which demonstrates the use of leading questions allowed the victim to communicate her testimony effectively and efficiently. The trial court had the discretion to select the option it deemed most fair to all parties, including the victim. The evidence in the record substantiates the trial court's decision. We find no abuse of discretion.

*Refusal to Appoint An Interpreter*

Defendant argues that, instead of allowing the use of leading questions, the trial court should have appointed an interpreter to communicate the victim's testimony. ■ As noted, section 701 provides that a person who cannot express himself or herself directly and who would otherwise be disqualified may be competent to testify if the person is capable of communicating "through interpretation by one who can understand him [or her] . . . ." (§ 701, subd. (a)(1).) Since the trial court found the victim was capable of expressing herself directly, section 701 did not require that she communicate through an interpreter.

■ Defendant further contends the court was required to appoint an interpreter for the victim under section 752 because she was incapable of expressing herself in English. Under section 752, subdivision (a), "[w]hen a witness is incapable of understanding the English language or is incapable of expressing himself or herself in the English language so as to be understood directly by counsel, court, and jury, an interpreter whom he or she can understand and who can understand him or her shall be sworn to interpret for him or her." The statute is broad enough to permit a court to appoint an interpreter for a witness whose difficulty communicating stems from a physical disability. (Cal. Law Revision Com. com., reprinted at 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 752, p. 372.)

But again, the decision on whether to appoint an interpreter falls within the trial court's discretion. (*People v. Holtzclaw* (1926) 76 Cal.App. 168, 173 [243 P. 894].) *Holtzclaw* upheld the trial court's refusal to appoint an interpreter for a Japanese-speaking witness who spoke limited English. In making its decision, *Holtzclaw* looked to the whole of the witness's testimony and found the witness demonstrated, overall, that he could sufficiently communicate his perceptions so as not to require an interpreter. (*Id.* at pp. 176–177.)

Here, victim's recorded testimony, as a whole, demonstrates an adequate ability to communicate her perceptions in the English language so as to be understood by the court, counsel, and the jury without interpretation. The victim spoke English, notwithstanding defense counsel's attempt to compare her to a Spanish-speaking witness. She had completed high school and some college courses. Her mental capacity is evident in her recorded testimony; even defendant attested to the victim's intelligence. Defense counsel understood the victim well enough to interject several evidentiary objections to her testimony. And, as noted, all of her testimony was recorded in the reporter's transcript.

In part, the trial court found appointing an interpreter for the victim an inappropriate solution to her "communications problem" due to the lack of an adequate interpreter. It stated that it did not know of an interpreter capable of communicating the testimony of a witness afflicted with cerebral palsy, and anticipated a family member would not be considered an acceptable substitute: "It would be foolish to assume that the defense would want to have her father up there with her 'interpreting' . . . her answers . . . ." Defense counsel confirmed the court's suspicion. Counsel suggested the court interpret the victim's testimony, but the court responded that, as a practical matter, it would be no more able to interpret her testimony than anyone except a member of her family. Defendant now proposes a speech therapist or medical professional might have served as an interpreter. But she made no such recommendation at trial, even when the court asked for suggestions. It is too late to do so now.

The court's refusal to appoint an interpreter to communicate the victim's testimony was within the limits of its discretion. There is ample evidence in the record to support the conclusion that the victim could sufficiently communicate her testimony without the aid of an interpreter.

*Defendant's Rights to Confrontation and Due Process*

Finally, defendant argues the trial court's decision to permit the victim to testify by answering leading questions, in which the examining attorney

restated the victim's answers, and by also refusing to employ an interpreter, violated her constitutional rights to due process and confrontation. This argument is without merit.

Defendant relies on the decision in *Tyars v. Finner* (9th Cir. 1983) 709 F.2d 1274, which found the defendant's right to due process had been abridged by an interpreter's misstatement of the defendant's testimony. In that case, the interpreter "on occasion would answer the questions himself without even purporting to give Tyars' answer" and "Tyars' understandable words were not always the same as those repeated by the interpreter . . . ." (*Id.* at p. 1277.)

*Tyars* is not on point. Here, no interpreter misinterpreted or misstated the victim's testimony. Any restatements of her testimony by counsel were subject to the victim's approval as to their accuracy. Most of the examining attorney' s restatements matched the court reporter's record of the victim's preceding statements, and the victim did not hesitate to point out mistakes when counsel misstated her testimony. As the trial court noted, the victim's "agreement or lack thereof, her disagreement, specifically, is pretty obvious. It's pretty clear when she says yes, she means yes; when she says no, she means no."

Defendant also claims her Sixth Amendment constitutional right to confrontation was abridged. We disagree. " 'The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. . . .' " (*Davis v. Alaska* (1974) 415 U.S. 308, 315–16 [39 L.Ed.2d 347, 94 S.Ct. 1105].) Defense counsel cross-examined the victim over a two-day period covering 110 pages of the record. "As long as the defendant is fairly permitted to confront and cross-examine the witnesses against him, his constitutional rights are unimpaired." (*People v. Spain* (1984) 154 Cal.App.3d 845, 854 [201 Cal.Rptr. 555].)

■ It is irrelevant that defendant's cross-examination of the victim was ineffective due to the latter's physical impairment. The Sixth Amendment is intended to secure an adequate opportunity for cross-examination, not cross-examination which is efficacious in the manner or to the extent sought by the defense. (*United States v. Owens* (1988) 484 U.S. 554, 557, 559 [98 L.Ed.2d 951, 108 S.Ct. 838]; *People v. Cudjo, supra,* 6 Cal.4th at p. 622.) Defendant received a full opportunity to cross-examine the victim, which is all the Sixth Amendment requires.

### DISPOSITION

The judgment is affirmed.

Moore, J., and Fybel, J., concurred.

A petition for a rehearing was denied October 20, 2003, and appellant's petition for review by the Supreme Court was denied December 10, 2003.