Filed 1/28/26  Estate of Turner CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

Estate of BETTY TURNER, Deceased.

| | |
|---|---|
| VICTOR R. TZANKOV,<br><br>    Petitioner and Appellant,<br><br>v.<br><br>KELLY J. TURNER et al.,<br><br>    Objectors and Respondents. | E083206<br><br>(Super.Ct.No. PROSB2200416)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Michelle H. Gilleece, Judge.  Affirmed.

Victor R. Tzankov, in pro. per., for Petitioner and Appellant.

Law Offices of Marc E. Grossman, Marc E. Grossman and James T. Lee for Objectors and Respondents.

In a spousal property petition, petitioner and appellant Victor R. Tzankov (Tzankov) alleged he is the surviving spouse of Betty Turner (Decedent), and he sought to have Decedent's property pass to him without the administration of probate.[1] (Prob. Code, § 13650, subd. (a).) Objectors and respondents Kendall Turner and Kelly Turner (collectively, Sons), who are Decedent's sons, asserted that Tzankov was never Decedent's spouse. The probate court granted Sons' motion for judgment denying Tzankov's spousal property petition.[2] Relatedly, the probate court denied Tzankov's motion for entry of Sons' default on the spousal property petition.

Tzankov raises 17 issues on appeal. As explained *post*, 11 of the issues are beyond the scope of this appeal. We address the remaining six issues on the merits. First, Tzankov contends the probate court erred by failing to state its reasons for denying his spousal property petition. Second, Tzankov contends the probate court erred by converting the hearing on his spousal property petition into a trial "without adequate notice or opportunity for preparation." Third, Tzankov accuses the probate

---

[1] This court previously addressed the related case of *K.J.T. v. Tzankov* (June 17, 2022, E075938) [nonpublished opinion].

[2] The probate court referred to its action as granting Sons' motion for nonsuit. The probate court remarked that "nonsuit" was not the correct word in the probate setting but could not recall the appropriate word. The probate court said, "I don't remember what it's called in probate. There's a different name for it in the Code, but it's basically the same thing, that there's not enough evidence to proceed with the petition at this point in time any further." Nonsuit is a term that applies to a jury trial. (Code Civ. Proc., § 581c, subd. (a); *Roth v. Parker* (1997) 57 Cal.App.4th 542, 549.) We believe the term the probate court was trying to recall is "a motion for judgment," which applies to a bench trial. (Code Civ. Proc., § 631.8, subd. (a); *Hillman v. Stults* (1968) 263 Cal.App.2d 848, 881.)

court of bias.  Fourth, Tzankov asserts the probate court denied him a fair hearing by failing to provide him an interpreter.  Fifth, Tzankov contends the probate court erred by scheduling three motions to be heard at the same time as the evidentiary hearing on the spousal property petition.  Sixth, Tzankov asserts the probate court erred by denying his motion for entry of Sons' default on his spousal property petition.  We affirm.[3]

## FACTUAL AND PROCEDURAL HISTORY

A.     PRETRIAL

1.     *SONS' EVIDENCE OF DECEDENT'S MARRIAGE TO THEIR FATHER*

Sons asserted Decedent was married to Sons' father, Gilbert Ray Turner (Father), from June 24, 1956, until she died in May 2021.  In March 2020, in a small claims case, Decedent signed an affidavit that reads in part, "I am a resident of California and have been legally married to, but living separately from my husband, Gilbert R. Turner.  We were married on 6/24/1956.  We have never filed for a legal separation or divorce.  I am not married to Victor R. Tzankov."

For tax years 2014, 2015, 2016, 2017, 2019, 2020, and 2021 Decedent filed her taxes as "Married filing separately," and named her spouse as Father.  Father was still alive when Decedent died.  Father was a conservatee; his public guardian asserted, on information and belief, that Father was married to Decedent at the time of her death.

---

[3]  Tzankov's April 30, 2025, request for judicial notice is denied.

3

## 2. *TZANKOV'S PURPORTED MARRIAGE CERTIFICATE*

In a "request for relief" pertaining to his spousal property petition, Tzankov asserted that he lived with Decedent from 2005 to 2012, and they were married from 2012 until she died in 2021. As an exhibit to a motion to dismiss Sons' probate petition, Tzankov provided a copy of a purported marriage certificate for himself and Decedent dated December 5, 2012 (the purported marriage certificate). The purported marriage certificate bears the license number D595649 and was signed by the Most Reverend Peter W. Goodrich in Ontario, Canada.

Sons provided the declaration of Archbishop and Primate of the Independent Anglican Church Canada Synod 1934 Peter W. Goodrich (the Archbishop) who looked through his records and found nothing indicating he performed a wedding for Tzankov and Decedent in 2012. In searching his records, the Archbishop found that he or an officiant associated with him recorded a marriage between Tzankov and a person by the last name Kohutiak on December 5, 1994. The license number for that 1994 marriage was D095648. The Archbishop further "found that the prefix D was used [for licenses] until the end of 1999, then the prefix 'E' became in use. No weddings performed in Ontario in 2012 would have had a serial number starting with the letter 'D'." The Archbishop went on to detail other problems with the marriage license, such as cursive being used rather than block letters, the full address of the chapel not being included, that he was recovering from two strokes in 2012 and likely would not have performed a wedding at that time, and the church being misidentified as "Anglican Rite," when the

4

Archbishop would have written "IND. ANGLICAN" for the Independent Anglican Church.

At Sons' request, the Office of the Registrar General for Ontario searched for a marriage registration between Tzankov and Decedent between 2010 and 2014 and found nothing.

B.      TRIAL

While testifying at trial, Tzankov moved to have the purported marriage certificate admitted into evidence. Sons objected to the purported marriage certificate being admitted on the basis that it had not been authenticated. The probate court asked Tzankov, "[D]o you have a certified copy of this, or do you have a custodian of records declaration indicating that it's a true copy of the certificate of marriage?" Tzankov replied, "No. Never been requested." The court asked Tzankov if he had "any way to authenticate this [purported] certificate of marriage?" Tzankov replied, "I'll try. But I cannot do it now." The trial court sustained the objection and did not admit the purported marriage certificate into evidence.

After Tzankov completed his direct examination and rested, Sons made a motion for judgment asserting Tzankov failed to meet his burden of proof. The probate court granted the motion concluding "there's not enough evidence to proceed with the petition," and explaining, "I have no proof that's been admitted into evidence that . . . Tzankov and [Decedent] were married at the time of her death." The trial court denied Tzankov's spousal property petition.

**DISCUSSION**

A.      EXPLANATION FOR ITS RULING

Tzankov contends the probate court erred by failing to state its reasons for denying his spousal property petition. "Pursuant to Probate Code section 13650, the surviving spouse may file a spousal property petition with the probate court to confirm the surviving spouse's interest in property that belongs to the surviving spouse and that passes to the surviving spouse without [traditional] probate procedures." (*Estate of Bonanno* (2008) 165 Cal.App.4th 7, 18.) When denying Tzankov's spousal property petition, the probate court explained that Tzankov failed to prove that he was Decedent's spouse, which is a necessary element of a spousal property petition (Prob. Code, § 13650, subd. (a)). Thus, the probate court explained its reason for denying Tzankov's petition.

B.      NOTICE

1.      *PROCEDURAL HISTORY*

Tzankov filed his spousal property petition on May 25, 2023. The petition was on calendar for October 19, 2023, and Tzankov was present in court. The probate court began the hearing by saying, "On the spousal property petition that was filed by Mr. Tzankov, I'm still missing notice. It wasn't filed, Mr. Tzankov. So do you have notice—proof of service, and notice? And then I also need attachment number 11 from the petition wasn't attached. I need a copy of the marriage certificate. And I need allegations that—factual allegations to support the requested relief that the property was

6

community property, or acquired during a valid marriage. So those are all items that I need to be submitted before the Court can proceed on this petition."

Tzankov said the purported marriage certificate was attached as an exhibit to his motion to dismiss Sons' probate petition. Sons argued that the purported marriage certificate was forged. The probate court said it would set the matter for an evidentiary hearing to make a "decision based on whatever evidence [Sons] and Mr. Tzankov were able to provide." The hearing was scheduled for December 2023.

On December 21, 2023, during the hearing on the spousal property petition, Sons sought to have the probate court deny the spousal property petition. The probate court said it would "set it for trial" on January 25, 2024, because Tzankov had not presented sufficient evidence and the court wanted to give him another opportunity to meet his evidentiary burden. The probate court explained to Tzankov, "[I]t is your burden to prove the spousal property petition elements and based on the information that you have submitted to the Court, I don't have sufficient evidence today to grant your petition. So I'm giving you an opportunity to augment your evidence." The probate court set the evidentiary hearing for January 25, 2024.

On January 25, 2024, the probate court held the evidentiary hearing on Tzankov's spousal property petition and denied the petition due to Tzankov's failure to prove he was married to Decedent.

2.    ANALYSIS

Tzankov contends the probate court erred by converting the hearing on his spousal property petition into a trial "without adequate notice or opportunity for

7

preparation." On October 19, 2023, in open court, with Tzankov present, Sons argued that Tzankov's purported marriage certificate was forged. In December 2023, the probate court told Tzankov that his evidence was insufficient and he was being given an opportunity to present more evidence to support his petition on January 25, 2024. Thus, Tzankov was notified that on January 25, 2024, he would need to provide evidence proving he was married to Decedent in order to support his petition. Tzankov's right to notice was not violated.

C.     JUDICIAL BIAS

Tzankov contends the probate court, in particular the Honorable Michelle Gilleece, was biased against Tzankov as demonstrated by her granting of continuances and transferring the case to other judges or commissioners. There is no indication that Tzankov filed an objection to Judge Gilleece hearing the case in the probate court. (Code Civ. Proc., § 170.3, subd. (c)(1).) Nevertheless, we will address this issue. (See *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218 [failure to preserve judicial bias claim].)

The record reflects no bias against Tzankov. To the contrary, Judge Gilleece went above and beyond to provide Tzankov ample opportunities to prove his case. For example, during the hearing on December 21, 2023, rather than deny Tzankov's petition due to a lack of evidence, the court continued the hearing to January 25, 2024 to give Tzankov another opportunity to prove his case. Given the patience that Judge Gilleece showed to Tzankov in providing him an extra opportunity to present sufficient evidence, we are not persuaded that she was biased against him.

8

D.     TRANSLATOR

Tzankov asserts the probate court denied him a fair hearing by failing to provide him with an interpreter.  Tzankov does not indicate if he requested an interpreter in the probate court.  Tzankov does not pinpoint where in the record he was unable to understand the proceedings due to his alleged unfamiliarity with English.  Because it does not appear that an interpreter was requested or required, error has not been demonstrated.  (*Forman v. Goldberg* (1941) 42 Cal.App.2d 308, 316 [No error in failing to appoint an interpreter when one was not requested and the witnesses appeared to understand English.]; see generally Evid. Code, § 752, subd. (b)(2) [In civil cases, the cost of an interpreter shall be apportioned among the parties.].)

E.     SCHEDULING OF MOTIONS AND TRIAL

1.     *PROCEDURAL HISTORY*

a.     Motion to Dismiss

On March 24, 2022, Tzankov filed a petition for probate of Decedent's will and requested that he be appointed executor.  On May 13, 2022, Sons filed their petition for probate of Decedent's will and requested that they be appointed as executors.  On October 18, 2023, Tzankov filed a motion to dismiss Sons' probate petition.  The purported marriage certificate was attached to his motion as an exhibit.

b.     Motion for Entry of Default

Tzankov's spousal property petition was filed on May 25, 2023.  Sons filed their opposition to the petition on July 14, 2023, asserting that Tzankov was never married to Decedent.  At the hearing on October 19, 2023, the probate court told Tzankov that he

9

needed to provide "factual allegations to support the requested relief that the property was community property, or acquired during a valid marriage." The probate court ordered Tzankov to file his amendments by November 20, 2023. Per the reporter's transcript, the probate court ordered Sons to file any response by December 7, 2023. However, per the minute order, the probate court ordered Sons to file any response by December 2, 2023, which was a Saturday.[4]

On November 17, 2023, Tzankov filed amendments to his spousal property petition that included pages of factual allegations. On Monday, December 4, 2023, Sons filed their reply to the amendments, again arguing that Tzankov was never married to Decedent. On January 2, 2024, Tzankov moved for Sons' default to be entered on the spousal property petition because Sons failed to respond to Tzankov's amendments by the December 2, 2023, deadline set forth in the minute order.

### c.　Motion for Sanctions

On January 2, 2024, Tzankov filed a motion for $100,000 in sanctions against Sons' attorneys. The motion listed various actions that Tzankov alleged were made in bad faith, such as requesting continuances and filing allegedly frivolous declarations.

### d.　January 25, 2024, Hearing

The motion to dismiss, motion for default, motion for sanctions, and spousal property petition were all scheduled for a half-day hearing on the afternoon of January

---

[4] We take judicial notice of the fact that December 2, 2023, was a Saturday and December 4, 2023, was a Monday. (Evid. Code, § 451, subd. (f) [facts not reasonably subject to dispute].)

25, 2024. The hearing began at 1:38 p.m. The probate court denied the motion to dismiss at 1:54 p.m., denied the motion for entry of default at 1:56 p.m., and denied the motion for sanctions at 1:58 p.m. At 2:10 p.m., Tzankov began presenting his argument and testimony on the spousal property petition.

When the probate court said it sustained Sons' objection to the purported marriage certificate and would not admit it into evidence, Tzankov responded, "Any more hurdle[s] I have to overcome?" The probate court replied, "I don't know what else you have to present." At that point, Tzankov rested. At 3:45 p.m., immediately after Tzankov rested, Sons made their motion for judgment. The probate court granted the motion at 4:01 p.m.

2.      *ANALYSIS*

Tzankov contends the probate court erred by scheduling three motions to be heard at the same time as the evidentiary hearing on the spousal property petition because that schedule left insufficient time for the evidentiary hearing on the petition. The record reflects that Tzankov had ample time to present his case in support of his spousal property petition. The probate court did not cut-off Tzankov's presentation of evidence, rather, Tzankov chose to rest his case. We see no error resulting from the schedule.

D.      DEFAULT JUDGMENT

Tzankov asserts the probate court erred by denying his motion for entry of Sons' default on his spousal property petition. As set forth *ante*, there is a discrepancy between the reporter's transcript and the clerk's minute order as to when Sons' response

11

was due. Tzankov is using the shorter deadline from the minute order, which was Saturday, December 2, 2023. For the sake of addressing Tzankov's argument, we will assume Saturday, December 2, 2023, was the correct deadline.

In court, Saturdays are considered holidays, so Sons' response was timely filed on the following Monday. (Code Civ. Proc., §§ 12a, subd. (a), 12b; *Montgomery v. Norman* (1953) 120 Cal.App.2d 855, 857-858.) There was no basis for entering Sons' default. The probate court did not err.

E. ISSUES BEYOND THE SCOPE OF THIS APPEAL

 1. *PROCEDURAL HISTORY*

On February 5, 2024, Tzankov filed a notice of appeal indicating that he was appealing from an unidentified order or judgment. Approximately one week later, Tzankov filed his civil case information statement with five attachments, which were all copies of the probate court's January 25, 2024, minute order. Attachment-A was titled for the denial of Tzankov's motion for sanctions. Attachment-B was titled for the denial of Tzankov's motion for entry of Sons' default on the spousal property petition. Attachment-C was titled for the denial of Tzankov's spousal property petition. Attachment-D was titled for the denial of Tzankov's motion to dismiss Sons' probate petition. Attachment-E was titled for the scheduling of a trial setting conference pertaining to Sons' and Tzankov's competing petitions for probate.

This court dismissed Tzankov's appeal on the basis that none of the rulings constituted appealable orders. Tzankov moved to have his appeal reinstated. This court reinstated Tzankov's appeal as to Attachments B and C—the denial of his motion for default on the spousal property petition and the denial of the spousal property petition.

2.      *ANALYSIS*

" 'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' " (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.) In the instant case, we are limited to reviewing the probate court's rulings (1) denying Tzankov's motion for default on the spousal property petition, and (2) denying Tzankov's spousal property petition.

Tzankov raises a variety of issues that are beyond the scope of our review. Tzankov contends that (1) Sons "unlawfully transferr[ed] property without proper probate proceedings";; (2) Tzankov is the owner of Decedent's real property through adverse possession; (3) Sons have been unjustly enriched by Tzankov's work improving Decedent's real property; (4) an advisory opinion is needed "regarding the appealability of pre-judgment sanctions"; (5) the probate court lacked jurisdiction over Sons' probate petition; (6) Sons lacked standing to petition for probate of Decedent's will; (7) Tzankov was not given proper notice of Sons' petition for probate of Decedent's will; (8) the will presented in Sons' petition for probate is invalid; (9) Sons failed to file a timely petition for probate; (10) a 2022 minute order in a related case (pertaining to a temporary order of protection) wrongly reflects that Tzankov was telephonically present

13

at the hearing; and (11) during a hearing in August 2022, the trial court admitted a letter and canceled check that were "obtained through an unlawful search and seizure."

Because those 11 issues are beyond the scope of the probate court denying the spousal property petition and the related motion for default, we cannot review them in this appeal.

## DISPOSITION

The orders denying the spousal property petition and the motion for default are affirmed. Respondents, Kelly J. Turner and Kendall F. Turner, are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                              J.


We concur:


McKINSTER _____
                Acting P. J.


CODRINGTON _____
                                J.


14